## KANSAS CITY INTERURBAN RAILWAY COMPANY v. DAVIS et al., Appellants.

### In Banc, June 20, 1906.

1. **CONDEMNATION: Limitation on Power.** The power given to a railroad company to condemn private property for its own use is to be exercised within strict limits. The law does not authorize the incorporating of a company with a roving commission to go anywhere in the State and condemn land in spots.

2. ———: ———: **Meanders.** A charter calling for a line of railway approximating twenty miles in length from a point in Kansas City to Lee's Summit, does not mean a straight line of ex-

Kansas City Interurban Ry. Co. v. Davis.

actly twenty miles in length, but it does mean a line with only reasonable meanders and reasonably approximating the length named. It does not mean a railroad from Kansas City to Swope Park.

3. ———: ———: **Map.** The law requiring the railway company to file a profile map of the route intended to be adopted in the county is not satisfied with a map of a part or a section of the route.

4. ———: ———: **Abandonment.** A railroad corporation has no right to willfully abandon any portion of its chartered route; and if at the trial of the proceeding to condemn the land of certain defendants, its purpose is made manifest to construct only a part of the road called for by the charter, it will not be permitted to condemn the property.

5. ———: ———: **Map: Proof.** Where the petition says that plain-has a charter that authorizes it to build a railroad from a certain point in Kansas City to a certain point in Swope Park, and that its profile map shows "the actual survey, location and distance of said railroad," it will be held on appeal that the map proved what the petition alleged, that is, that the route was to run to Swope Park, and, therefore, neither the allegation nor proof was in harmony with the charter which authorized plaintiff to build a railroad from Kansas City to Lee's Summit.

6. ———: **Defendants: Non-Agreeing Land-Owners.** Where all the non-agreeing land-owners of the county or circuit whose land was to be taken, were not made parties defendant, the petition is fatally defective; and if that fact is made to appear by the proof, the proceeding should be dismissed.

7. ———: ———: ———: **Statutes.** The words "shall be," used in section 1264, R. S. 1899, which says that all non-agreeing land-owners affected by the condemnation proceeding "shall be" joined as defendants, are not modified into "may be" by section 1267, which says that "any number of owners may be joined in one petition," etc.

8. ———: ———: ———: **How Raised.** Where both parties tried the cause on the theory that one of the issues was that all non-agreeing land-owners affected by the proceeding had not been joined as defendants, it will be too late on appeal to raise the point that that issue was not raised by demurrer or by answer.

Appeal from Jackson Circuit Court.—*Hon. Andrew F. Evans,* Judge.

REVERSED AND REMANDED (*with directions*).

*James F. Mister* and *Wash Adams* for appellants.

(1) The corporate existence of the plaintiff is an issue which may be made in a proceeding to condemn property. Railroad v. Shambaugh, 106 Mo. 566. (2) 1. The charter of plaintiff is forfeited under the very terms of the statute (in failing to do what the law requires of it within the time prescribed by law) that is to say, by the Statute of Limitations. It is the manifest purpose of this statute (R. S. 1899, sec. 1161), to require that the construction of a railroad should be begun in a reasonable time, and continued steadily and in good faith to completion, and that a large percentage of its capital stock should be actually expended, and that the railroad should be finished and put in operation for public use. The law intends in such a case as this "that its corporate existence and powers shall cease," and not that it shall go on indefinitely with neither purpose nor responsibility, neither regarding its own obligations nor its duties to the public. 2. Failure to comply with this statute operated *ipso facto* to dissolve plaintiff corporation. Ford v. Railroad, 52 Mo. App. 439; In re Railroad, 75 N. Y. 335; Farnham v. Benedict, 107 N. Y. 159; Railroad v. Brooklyn, 78 N. Y. 524; In re Railroad, 105 N. Y. 97; Commonwealth v. Water Co., 110 Pa. St. 391. (3) 1. There has never been made or had, even to this day, an established route or right of way such as the law contemplates and requires. The right of way has been attempted to be subjected by piecemeal, with such variations and breaks in its line that the route is not continuous to the extent of five miles from Kansas City in any direction, and not fairly in the direction of Lee's Summit, its pretended terminus. 2. And even over this nominal space, accomplished only by evasion and jugglery, there are spaces of 700 or 800 feet, by its own admissions, on its pretended right of way, which have not been acquired by plaintiff to this day, either by voluntary transfer

of the owner, or by any proceedings of condemnation. 3. Nor has the consent of owners been had or asked, in such a way as to justify the condemnation proceedings instituted here or elsewhere. Nor were such profile maps filed as would enable owners of land to understand or be informed as to the right of way sought to be subjected. (4) 1. The petition in this case does not even purport to make (nor in fact make) parties defendant to this suit, "the owners of all such parcels as lie within the county or circuit," as the statute expressly requires. R. S. 1899, sec. 1264. 2. Sections 1264 and 1267 contemplate only one condemnation proceeding in each county or circuit through which the proposed road is to run, and requires all persons interested in the land to be made parties thereto. 3. The statute must be strictly complied with, and the record itself must affirmatively show this. Wherever it has been attempted by summary proceedings to divest the owner of his property, the record must affirmatively show that the conditions precedent to the exercise of such extraordinary powers have been fully complied with. Anderson v. Pemberton, 89 Mo. 66; Brush v. Detroit, 32 Mich. 43.

*Moore & Handy* for respondent.

(1) (a) It is not necessary to join all persons owning tracts of land along the line of the proposed road, in one county or circuit, as parties defendant in one petition. Railroad v. Railroad, 129 Mo. 70; R. S. 1899, secs. 1161, 1267. (b) Sections 1264, 1266 and 1267 should be read and construed together. Section 1264 provides, "to which petition the owners of all such parcels as lie within the county or circuit shall be made parties defendant." Section 1267 provides that any number of parcel owners resident in the same county or circuit may be joined in one petition as parties

defendant. The point is that section 1267 is controlling as to parties, and this court substantially so held in the following cases: Railroad v. Kellogg, 54 Mo. 334; Railroad v. Carter, 85 Mo. 448. These two last-named cases have been overruled by Union Depot Co. v. Frederick, 117 Mo. 138, so far as joinder of non-resident parcel owners is concerned, the court holding that under other provisions of the article it was proper to join non-resident with resident parcel owners. As between the two sections above quoted in other respects the force of the Kellogg and Carter cases is not impaired. (c) The proper construction of the clause quoted from section 1264 is that all persons interested in the same parcel should be made parties defendant in one petition so that a judgment might be rendered that would do justice to all and prevent further litigation. This idea is supported by Union Depot Co. v. Frederick, 117 Mo. 146. (d) These sections should be so construed that all may stand if it is possible so to do. Manker v. Faulhaber, 94 Mo. 430; Curtwright v. Crow, 44 Mo. App. 567; Sutherland on Statutory Construction, secs. 239-41; St. Louis v. Howard, 119 Mo. 41; State v. Klein, 116 Mo. 265; Andrew County v. Schell, 135 Mo. 42. (2) Appellants contend that sufficient profile maps were not filed. They have not seen proper to incorporate the maps that were filed and were introduced in evidence in the bill of exceptions; therefore, this court cannot inspect them. If the maps had been made part of the bill of exceptions this court would have the same evidence before it that the trial court had. The trial court necessarily found the maps sufficient in form and character. Corey v. Railroad, 100 Mo. 282. However, according to the witness Stahlnaker, county surveyor, the maps were sufficient and afforded data from which all necessary points could be demonstrated. Becker v. Rardin, 107 Mo. 119; Green v. Higham, 161 Mo. 333. (3) The petition pleads an ineffectual effort on the part of the plaintiff to agree

with appellants as to damages to be sustained by them by reason of the taking of the tract of land described, and the proof abundantly sustains the allegation. Corey v. Railroad, 100 Mo. 282; Moses v. Section Dock Co., 84 Mo. 242; Wilkinson v. Dock Co., 102 Mo. 130. (4) Appellants cannot raise in this proceeding the question whether or not the plaintiff, respondent, had capacity to condemn a right of way. Railroad v. Railroad, 129 Mo. 62. But referring to the testimony, there is no evidence that respondent did not comply with the law as to time of commencement of work on its road and the expenditure of the statutory amount within the first year and subsequent years.

VALLIANT, J.—The plaintiff railroad company is seeking by this proceeding to condemn a right of way for its road through certain land of defendants in Jackson county. On filing the petition commissioners were appointed to assess the defendants' damages and in due time they made their report assessing the value of the property taken at $800 and the damages to the remaining property at $250; exceptions to the report were filed by defendants, which coming on to be heard, upon the pleadings and evidence, were by the court overruled, and a judgment of condemnation accordingly was entered, from which judgment the defendants have taken this appeal.

There are two points of chief importance presented for our consideration; the first is the insistence that the plaintiff has no corporate franchise to build a railroad between the termini stated in the petition; the second, that the owners of all the lands within the county to be taken for the plaintiff's right of way, with whom the plaintiff has been unable to agree on the compensation to be paid, are not made parties defendant to the suit.

I.    In the petition the plaintiff states that it is a corporation "organized under the laws of Missouri

with full power and authority to construct, maintain and operate a standard guage railroad for public use in the conveyance of persons and property in the State of Missouri from a point commencing at or about Forty-eighth street and Main street in Kansas City Jackson county, Missouri, to a point in Swope Park, in said Jackson county, Missouri, in section 11, township 48, range 33, across and over the tract of land hereinafter mentioned; that the general direction of said line of railroad built and to be built by your petitioner from said beginning point is easterly and southerly.''

The petition then goes on to state that the plaintiff had made and filed in the office of the county clerk a profile map of the route proposed and intended to be used in the construction and operation of "said railway," etc. Then, follows a statement that the defendants are the owners of a certain tract of land through which it is proposed to construct the road and a description of the land. After which it is stated that the general course of the proposed road is northeasterly through this land and that it is "an extension of the petitioner's line of railway from said beginning point above mentioned.''

On the trial the plaintiff to prove its corporate authority to do what it was seeking to do introduced in evidence its charter, from which it appeared that it was organized as a railroad corporation under the laws of this State; that "Kansas City in Jackson county, Missouri, and Lee's Summit in Jackson county, Missouri, are the places from which and to which the road is to be constructed, maintained and operated,'' and that its length was to be twenty miles.

When this proof was made the defendants moved to dismiss the proceeding for the reason, among others, of the discrepancy between the road proposed in the petition and that authorized by the charter. The motion was overruled and exception taken.

The power given to a railroad company to condemn private property for its own use is to be exercised within strict limits. The law does not authorize the incorporating of a company with a roving commission to go to any points in the State at will and condemn land in spots. It is required of the parties seeking to be incorporated as a railroad company that they state in their articles of association the places from and to which the road is to be constructed, and beyond the course between the points named (except as the law authorizes branches) the corporation has no right to go. Under a charter to build a road from St. Louis to Kansas City the corporation would have no authority to build a road from St. Louis to Springfield, nor would a company which is chartered to build a railroad from Kansas City to Lee's Summit be authorized to build one from Kansas City to Swope Park. The plaintiff's charter calls for a line approximating twenty miles in length from a point in Kansas City to Lee's Summit. That does not mean of course a straight line of exactly 20 miles in length, but it does mean a line with only reasonable meanders and reasonably approximating the length named in the charter. And the law contemplates that the company when it exercises the power of eminent domain intends in good faith to build the road its charter calls for. Section 1056, Revised Statutes 1899, requires the company before constructing any part of its road to file a profile map in the office of the county clerk of the route intended to be adopted in that county. That requirement of the statute is for the information of all concerned, especially those whose lands are to be taken, and the law is not satisfied with a profile map of a part or a section of the route in the county.

A railroad corporation has no right to wilfully abandon any portion of its chartered route; the right confered carried the obligation to perform. Section 1161, Revised Statutes 1899, declares that if the com-

pany does not begin the work of construction within two years and finish it within ten years it shall forfeit its corporate existence and its powers shall cease; then follows a proviso that if the company has in the meantime built a portion of its road it may retain and operate that portion. That proviso comes only as a modification of the forfeiture prescribed in the main body of the section; it is not intended to authorize a partial abandonment of the charter obligation, but it operates only when the condition of forfeiture has occurred and when without it all corporate rights would cease and the property become forfeited. It is not an authority to proceed to construct, but a permission to hold that which has already been constructed and which but for the proviso would be forfeited.

When a corporation claiming the power to take private property for its own use invokes the aid of a court to carry out its purpose, the court will require it to show without equivocation that it is exercising the extraordinary power within the strict boundaries of the law. The court will not lend its aid to assist the corporation in such case until the corporation makes an unequivocal showing that it is doing exactly what the law authorizes it to do.

If this corporation had come into court saying in its petition, "We have a charter which authorizes us to build a railroad from a point in Kansas City to Lee's Summit in Jackson county, covering a line of about 20 miles in length as near as we can estimate it, but we have concluded to abandon that line, and in lieu thereof we purpose to build only a road from a point in Kansas City to a point in Swope Park in Jackson county and we need the defendant's property for our right of way," would any one contend that on that showing the court would entertain the petition? Now, what is the difference in legal effect between a case stated in such a petition as that would be, and the case made by the evidence under the petition we have before us? Here the

plaintiff comes and says in its petition that it has a charter that authorizes it to build a railroad from a certain point in Kansas City to a certain point in Swope Park; so far as the petition shows that is all that the plaintiff has a right to do and it is all that it purposes to do. Yet when it comes to the proof the plaintiff shows a charter that authorizes it to build a road only from Kansas City to Lee's Summit. Taking the statements in the petition in the light of the charter introduced in evidence, they mean that the plaintiff intends to use this charter for the sole purpose of building a road to Swope Park and abandon the rest; and so far as the rights of these defendants are affected, if we allow their property to be taken under this proceeding, the effect is the same as if the plaintiff had come into court avowing a purpose to abandon the road its charter calls for.

A charter to build a road from Kansas City to Lee's Summit is certainly not the same thing as a charter to build a road from Kansas City to Swope Park; yet if the plaintiff in this case had, at the trial, introduced in evidence a charter authorizing it to build a road from Kansas City to Swope Park, it would have been proof of the averments in the petition of the plaintiff's corporate power; how then can it be said that a charter to build a road to Lee's Summit is proof of the same averments?

If plaintiff relies on the fact that Swope Park is on the line of its charter route from Kansas City to Lee's Summit, then the burden of proving that fact rested on the plaintiff. Opposing counsel in their briefs are not agreed as to whether it is or is not, and we are unable to decide from the evidence.

Even if it appeared in evidence that Swope Park was on the line between Kansas City and Lee's Summit, that would not justify this proceeding because the whole record shows only a purpose to build a road

to Swope Park and negatives the purpose of building the road called for in the charter.

Plaintiff in its brief says that it was the duty of the defendants, who are the appellants, to have brought up the profile map that was in evidence, and that since they did not do so the presumption must be indulged that the map proved what the plaintiff offered it in evidence to prove.

Section 1056 requires the railroad company to file a profile map of its route intended or already adopted through the county and that it shall be based on actual surveys. The petition states that "a profile map of the route proposed and intended to be used in the construction and operation of said railway, which profile map shows the actual survey, location and distances of the road bed of said railroad," etc., following the language of the statute, has been filed. That averment must be understood to mean just what it says, that the profile map shows the "said railroad," that is, the railroad previously described in that petition, a railroad from Kansas City to Swope Park. And if that is true, and if that map shows the location of the whole road in the county as the statute requires, and as the petition says it does, then it also is evidence of a purpose to abandon the road to Lee's Summit. Mr. Winner, a witness for plaintiff and its right of way agent, was asked on cross-examination if there had been any survey to Lee's Summit, to which he answered: "There has been what we call a preliminary survey, but no location. We have got to make a located map before we can condemn, and to do that we have to make sometimes three or four preliminary surveys." There was therefore no location, no profile map as the statute requires, of the road called for in the charter.

We construe this petition to mean that the plaintiff's purpose is to build a railroad from the point named in Kansas City to a point in Swope Park only

and that under the charter introduced in evidence it has no authority to do so.

II. In Railroad v. Nelson, 193 Mo. 297, there was a demurrer to the petition on the ground (among others) that it appeared on the face of the petition that there were other lands in Jackson county to be taken, yet the owners thereof were not made parties defendant. The judgment of the circuit court sustaining the demurrer was reversed because (on this point) we held that although it appeared that those other land-owners were not made parties defendant, yet it did not appear but that they had all agreed with the company as to the amount of compensation to be paid.

In the case at bar it did appear at the trial that there were other persons whose lands in the county were to be taken whose names were known and with whom the plaintiff had not been able to agree, who were not made parties defendant. Plaintiff now says that the defendants tendered no such issue in their answer and were not entitled to interpose that objection.

In the answer filed by defendants they did say: "Defendants also aver that the petition does not aver that the owners of all such parcels of land as lie within the county have been made parties defendant." That is really in the nature of a demurrer, and as such it falls within the judgment of this court in the Nelson case, above cited. But although it is defective as a plea, in that it fails to state that no agreement could be made with those other parties, yet it is at least an attempted pleading of a material fact, and although defective, yet the defect was not brought to the attention of the court, but it was treated as a good plea and evidence on it without objection was received. In the cross-examination of Mr. Winner the plaintiff's right of way agent, he stated that there were other parties whose lands in the county were to be taken with whom he had not been able to agree, and was then

asked: "Q. You did not make them parties to this one
suit here? A. No, sir, we don't have to make any
party except the party we are condemning to each
suit." Proceedings of this kind as to the pleadings
and in some other features are not within the Code of
Civil Procedure; they are proceedings peculiar and
are prescribed by the statute which, although it calls
for a petition and prescribes its requisites, does not call
especially for an answer. Both parties tried this case
on the theory that that was one of the issues in it, one
of the objections to the validity of the proceeding on
which the defendants were insisting, and it is too late
now to say that there was no such issue in the case.

Section 1264, Revised Statutes 1899, which pre-
scribes the course to be pursued when the corporation
seeking to condemn cannot agree with the land-owners,
requires that a petition shall be filed and prescribes
what the petition shall contain, and it says: "to which
petition the owners of all such parcels as lie within the
county or circuit shall be made parties defendant, by
name, if the names are known, and by the description of
the unknown owners of the lands therein described, if
their names are unknown." That is such a plain and
unequivocal requirement of the statute that there is no
call for judicial interpretation. The question has never
been presented to this court before. The statute in its
present form was enacted in 1866. [Laws 1865-6, p.
47.]

In Railroad v. Kellogg, 54 Mo. 334, and Railroad
v. Carter, 85 Mo. 448, it was held that under this statute
non-residents could not be joined with residents in the
same petition, but those two decisions on that point
were overruled in Union Depot Co. v. Frederick, 117
Mo. 138.

In the brief for the plaintiff it is argued that the
language of the statute above quoted is qualified by the
terms of section 1267 of the same article. The whole
of that section is contained in these words: "Any num-

ber of owners, residents in the same county or circuit, may be joined in one petition, and the damages to each shall be separately assessed by the same commissioners.'' The argument is that the term ''shall be'' in section 1264 is to be cut down to ''may be'' to harmonize with section 1267. These two sections are parts of the same original act of 1866. If the purpose of the lawmakers in enacting section 1267 was to qualify the term ''shall be'' in the previous section they were not driven to writing another section to accomplish that purpose, because the previous section had not passed out of their keeping and they could have made the change by simply erasing one word and substituting another. The argument is that the words ''shall be'' in 1264 are to be read ''may be'' to harmonize with 1267. But to do so we would have to cut out of 1264 another sentence which also means ''shall be.'' The closing sentence in that section is: ''It shall not be necessary to make any persons parties defendant in respect to their ownership, unless they are either in actual possession of the premises to be affected, claiming title, or have a title to the premises appearing of record upon the proper records of the county.'' Why say it shall not be necessary to make persons parties defendant unless, etc., if the making of them parties was already not necessary but was a matter left to the will and pleasure of the plaintiff? The word ''necessary'' in that connection shows that the lawmakers intended ''shall be'' to mean an imperative command.

In reading section 1267 in connection with the sections that preceded it, the only legislative purpose that it seems to have is that it expressly says that all the assessments in one county or circuit are to be made by the same commissioners; that is the only new feature that seems to be introduced by that section. Section 1264 requires all the non-agreeing land-owners in the county or circuit whose rights are to be affected, to be made parties defendant, then section 1266 directs

the appointment of commissioners and. requires the damages allowed each land-owner to be stated separately. We think the fair interpretation of that section means that one set of commissioners is to do the whole work, but to the legislative mind it may have occurred that a case might arise where there would be a large number of parties defendant along the line from one end of the county or circuit to the other, and the court might be puzzled to know if it was intended in section 1266 to give the whole matter into the hands of one set of commissioners or to appoint more than one set, and therefore section 1267 was inserted to make the point clear. But whatever else may have been the purpose of section 1267 we are satified that it does not cut down the meaning of the terms "shall be" and "necessary" in section 1264. It is no part of our duty to find a reason for the law as given us by the General Assembly; it is sufficient for us to understand what the law is as given and to apply it to the case in hand.

We hold that the petition in this case is fatally defective because it does not include as parties defendant other non-agreeing land-owners in the county whose lands are to be taken for the right of way of plaintiff railroad.

The judgment is reversed and the cause remanded with directions to dismiss the proceeding.

*Brace, C. J., Gantt, Burgess, Lamm* and *Graves, JJ.*, concur; *Fox, J.*, concurs in paragraph I and in the result, but expresses no opinion as to paragraph II.