[L. A. No. 1652. Department One.—April 5, 1907.]

WILLIAM FELLOWS, Appellant, v. CITY OF LOS AN-
GELES, and JOHN J. FAY, JR., et al., as the Board
of Water Commissioners of said City, Respondents.

WATER AND WATER-RIGHTS — PUBLIC USE OUTSIDE OF CITY — WATER
OBTAINED FROM LANDS WITHIN CITY.—Under the provisions of
article XIV of section 1 of the constitution, and of sections 1, 8,
and 10 of the act of March 12, 1885, (Stats. 1885, p. 95,) where
a corporation is organized to obtain water from lands situated
within a city, for sale and distribution to lands situated outside of
the municipality, the use to which the water so obtained is devoted
is a public use, and its sale and distribution is subject to public
control as in the act provided.

ID.—OBLIGATION TO FURNISH WATER.—Under sections 8 and 10 of that
act, corporations or persons engaged in furnishing water to the
inhabitants of any county which have appropriated water to that
use (other than to the inhabitants of a city, or town, or city and
county), are required to distribute such water at the rates fixed by
the board of supervisors of the county, or as fixed by the corpora-
tion or person, and, upon tender of such rates and demand therefor
by any inhabitant who is entitled to water from such system, the
corporation or person is under an obligation and duty to supply
such inhabitant with water, to the extent of his reasonable share
of the available supply belonging to the system.

ID.—ACT OF MARCH 12, 1885—PLACE OF APPROPRIATION—DISTRIBUTION
OUTSIDE OF CITY.—The provision of section 10 of that act, declaring
that ''every person, company, association and corporation, having
in any county in the state (other than in any city, city and county or
town therein) appropriated waters for sale, rental or distribution,
to the inhabitants of such county,'' shall be obliged, upon tender
and demand, to so distribute the water, should be construed so as
to make it harmonize with the title and purposes of the act, which
are to regulate and control the sale, rental, and distribution of
appropriated water in this state, other than in any city, city and
county, or town therein. So construed, the place of the ''appropria-
tion'' is the place where the water is used, and not necessarily the
place where the source of supply may be situated. Consequently, if
the place of distribution and use is outside of any city, town, or city
and county, the provisions of sections 8 and 10 apply to the system,
although the supply of water may be obtained from a natural source
situated within the limits of some city.

ID.—ACTION TO ENFORCE WATER SERVICE—EXTENT OF RELIEF—INJUNC-
TION—MANDAMUS—MISJOINDER OF CAUSES OF ACTION.—In an action
to enjoin the defendants, who were under the obligation of supplying

water to the inhabitants of the locality in which the plaintiff's premises were situated, from cutting off the water flowing in a certain pipe to one of his lots, and to compel them to furnish water to a certain other lot belonging to him, the superior court has jurisdiction to give any relief warranted by the facts alleged and within the scope of the prayer of the complaint, whether that relief be equitable or legal, or relief appropriate only in a special proceeding. And where the facts alleged in the complaint are sufficient to justify relief by injunction as to one lot, with additional relief by writ of mandate as to the other, and the proper parties defendant are before the court for both kinds of relief, the objection that there is a misjoinder of causes of action, even if well taken, cannot be raised by a demurrer upon the sole ground that the complaint does not state facts sufficient to constitute a cause of action. For the purposes of the demurrer that objection is waived.

ID.—WATER OBTAINED FROM LAND IN PUEBLO — SPANISH LAW — LOS ANGELES—DEDICATION FOR USE OF INHABITANTS.—The mere fact that a corporation organized under the laws of this state for the purpose of distributing water for public use to a locality outside of the city of Los Angeles, obtained its water from lands within the city, or even that it was taken from the Los Angeles River, which by the special dedication created by the Spanish law for the founding of pueblos was set apart for the exclusive use of the city of Los Angeles, would not excuse such corporation, or another private corporation as its successor, from furnishing water to the inhabitants of such locality, so long as they were able to obtain the water from that source for such use.

ID.—WATERS OF LOS ANGELES RIVER—''FUENTES''—SALE BY PUEBLO. —If the water so obtained from the land situated within the city of Los Angeles was not a part of or tributary to the Los Angeles River, and if it was impressed with a trust for the exclusive use of the inhabitants of the city at all, it is because it comes within the description of *''fuentes''*—springs of water appropriated to the supply of a town,—which were by the Spanish law considered as communal property. This class of pueblo property, unlike the rivers, was subject to sale to private persons by the pueblo.

ID.—PRIVATE OWNERSHIP OF COMMUNAL WATERS—REPURCHASE BY CITY. —Allegations in the complaint in such action that the land within the city from which the water was obtained was sold by the city of Los Angeles nearly fifty years ago, without reservation of any water or water-right pertaining thereto, and that some twenty years ago, and for several years thereafter, the water thereon, or a part of it, was devoted to public use outside the city, and that the city subsequently reacquired the land, and the water system connected therewith, from a water company which then owned it, and thereafter allowed the waters thereof to go to waste, sufficiently shows, *prima facie* at least, that the water upon the land had been reduced to private ownership and was not subject to the public use as part of the public waters of the city prior to and at the time of its

repurchase of the land and water system. Its purchase by the city from such company did not free the property conveyed from the burden put upon it by virtue of the appropriation of the water to public use, to which it was then subject in the hands of that company. If it is claimed that such water is tributary to the Los Angeles River, or necessary to its support as a part of its underground supply, or that it has otherwise become free from the burden to which it was previously subject, such facts must be shown in defense.

ID.—JUDICIAL NOTICE OF SITE OF LOS ANGELES.—The court takes judicial notice that the pueblo of Los Angeles was located near the river of that name, and its waters were dedicated to the public use for the inhabitants of that pueblo.

ID.—RIGHT OF LOS ANGELES TO ACQUIRE WATER—PURCHASE OF WATER SYSTEM—NECESSITY OF PURCHASE.—In the exercise of the power conferred on the city of Los Angeles by its charter (Stats. 1889, p. 455, sec. 2, subds. 7, 15), to acquire water and water-rights, within or without the city, for the use of its inhabitants, the city has the right to buy from any corporation or person engaged in supplying water for public use outside the city any surplus water which such corporation or person might possess, and, if necessary, in order to obtain such surplus, the city might purchase the entire water supply of such person or corporation, and the water-plant or system used in connection with it, so that, after operating the system and supplying the persons entitled to use the water, it could devote the surplus to the use of the inhabitants of the city. And on a demurrer to the complaint, in an action against the city as the successor of such a corporation, to enforce its obligations to furnish such water outside of the limits of the city, it will be presumed that the acquirement of such water plant by the city, and the operation of the system, were necessary.

ID.—NON-USER OF WATER BY CITY AFTER PURCHASE—DUTY TO FURNISH WATER AFTER DEMAND.—The city of Los Angeles, after it had acquired title to and control of the entire property and water system of a corporation engaged in supplying water derived from lands within the city to a locality outside of the city, will not be allowed, in the absence of facts or circumstances which might absolve it from the duty to continue the water service, to discontinue the operation of the system, cease to furnish the water, or any water, to the persons theretofore receiving and entitled to receive it from said system, retain title, possesssion, control, and management of all the property composing the system, and allow the water previously devoted to the public use to run to waste. If a proper demand, by a person entitled, is made upon it for the continuance of the service, it must either comply or permit the use of the property and plant in previous use and necessary for the service by the demandant, or by the persons beneficially interested, to the end that he or they may continue to devote the property to the public service to which it is dedicated.

ID.—ACTION TO ENFORCE SERVICE—DEFENSES—PLEADING.—In an action against the city to compel it to continue such water service, if such permission has been given, or if it is willing to make an effectual tender of such use in court, or if the service has become impossible from failure of the supply, or if a part only of the property is required for the administration of the service and the necessary part has been offered, or if any other lawful reason exists to excuse it from continuing the performance of the water service, the city must allege such facts in its answer by way of defense.

APPEAL from a judgment of the Superior Court of Los Angeles County. Waldo M. York, Judge.

The facts are stated in the opinion of the court.

Hazard & Harpham, for Appellant.

W. B. Mathews, and Herbert J. Goudge, for Respondents.

SHAW, J.—This is an action to enjoin the defendants from cutting off the water flowing in a certain pipe to the plaintiff's premises, and to compel the defendants to furnish water to certain other premises belonging to the plaintiff. The court below sustained a general demurrer to the complaint, and thereupon gave judgment in favor of the defendants, from which plaintiff appeals.

The facts upon which plaintiff relies are as follows: The city of Los Angeles was the owner of a tract of land inside the city limits near the east boundary thereof, and nearly two acres in extent, on which were flowing springs and which was permeated with water. In 1858 it sold and conveyed this land to one Elijah Moulton without reservation of any water-rights. In 1887 Henry T. Hazard was the owner of about two hundred acres of land outside of the city boundary, but adjacent thereto, which he had subdivided into blocks, lots, and streets, known as "Hazard's East Side Addition to the City of Los Angeles." Hazard agreed with certain other persons that he and they would incorporate a water company to buy the Moulton land and the waters thereof, construct a pumping plant thereon and a reservoir near by, and that they would pump and store said waters and lay pipes for and operate a water system for the distribution and sale of said water for public uses; that Hazard should superintend

the work of construction and operation of said plant until it became profitable, and should furnish one third of the money necessary to purchase the Moulton land; in consideration whereof, it was further agreed between them that said corporation, when formed, would lay a pipe-line from said reservoir or pumping station through said East Side Addition, and would thereafter, by means thereof, furnish water from said system to purchasers of lots in said addition, at the regular rates to be fixed.

In the year 1887 the corporation was formed under the name of "The East Side Spring Water Company," and it proceeded to purchase the Moulton land, construct the proposed water system, and lay the pipes to and through the said addition in certain streets thereof, and Hazard advanced from twelve thousand dollars to fifteen thousand dollars to the corporation for that purpose and superintended the work of constructing and operating the water system, all in pursuance of the agreement aforesaid. It is not alleged that the fifteen thousand dollars constituted one third of the cost of the Moulton land. In 1888 the plaintiff purchased of Hazard lot 19 of block 20 of said East Side Addition, built a residence thereon, in which he has ever since resided, and for which he requires water for domestic use. He has no other means of supply, except by and through said water-pipes. At the time he purchased the lot, the East Side Spring Water Company, at his request, connected the lot with its pipe-line, and thereafter furnished plaintiff with said water from said system.

In 1892 a company known as the "Los Angeles City Water Company" became the owner of the entire capital stock of the East Side Spring Water Company, and was consequently in control of its action, but it did not technically acquire title to any of its property except as the owner of said capital stock. On February 3, 1902, the East Side Spring Water Company sold and conveyed to the city of Los Angeles all its property, including the pumping plant, reservoir, and pipe-line aforesaid, and the city has, ever since that time, had the possession and management thereof. The East Side Spring Water Company thereupon dissolved and ceased to exist as a corporation. After the Los Angeles City Water Company obtained the capital stock of the other company,

as aforesaid, and until the sale of the plant to the city by the other company in 1892, the Los Angeles City Water Company "furnished the plaintiff with water upon said lot," and since said sale of the plant the city has furnished it. It does not appear from the complaint whether the water furnished to the plaintiff's lot by the Los Angeles City Water Company, through said pipe, was water obtained from said Moulton land, or was from some other source, the allegation in that respect being in the ambiguous language above quoted. It is alleged that the water "in, on and flowing from" the Moulton land is now unused and going to waste, and that the said plant is lying idle and has not been used since the city came into possession of it, and, inferentially, that the city supplies water for said system from some other source than from the Moulton land.

In 1900 the plaintiff purchased from Hazard lot 18 of block 20 in said East Side Addition, upon which he now desires to build a house, and which he desires to have connected with said water-pipes, in order to get water therefrom for the building operations.

Shortly before the complaint was filed, the plaintiff tendered to the city the legal charges for a water connection, offered to pay the established monthly rate in advance, and demanded that his said lot 18 of block 20 be connected with said pipe and be furnished with water by means thereof. The city refused to comply with said demand and refused to allow the plaintiff to make the connection himself. It also gave notice that it would cut off the supply of water for his residence on lot 19. It is alleged that it intends to and will, unless enjoined, cut off said supply, and that it claims that, because of the fact that said lots lie outside of the city, it is under no obligation to furnish water to them. It is alleged also that there is sufficient water available from the Moulton land to supply all the consumers of water along the pipelines of the East Side Spring Water Company's system. It is to be observed that the Moulton land, and the reservoir in which the water therefrom was stored, were within the city limits, but that the East Side Addition, including plaintiff's residence, was adjacent to, but outside, the city.

Under the provisions of the constitution (art. XIV, sec. 1), and of sections 1, 8, and 10 of the act of March 12, 1885,

(Stats. 1885, pp. 95, 97, 98,) the use to which the water obtained by the East Side Spring Water Company from the Moulton land was devoted was a public use and its sale and distribution was subject to public control as in the act provided. Under sections 8 and 10 of the act, corporations or persons engaged in furnishing water to the inhabitants of any county which have appropriated water to that use (other than to the inhabitants of a city, or town, or city and county), are required to distribute such water at the rates fixed by the board of supervisors of the county, or as fixed by the corporation or person, and, upon tender of such rates and demand therefor by any inhabitant who is entitled to water from such system, such person or corporation is under an obligation and duty to supply such inhabitants with water to the extent of his reasonable share of the available supply belonging to the system. (*Hildreth* v. *Montecito Cr. W. Co.*, 139 Cal. 26, [72 Pac. 395]; *Merrill* v. *South Side I. Co.*, 112 Cal. 433, [44 Pac. 720]; *Price* v. *Riverside etc. Co.*, 56 Cal. 431.)

The respondents claim that by reason of the language of section 10 of the act, this provision does not apply to the present case. The section declares that "every person, company, association and corporation, having in any county in the state (other than in any city, city and county, or town therein) appropriated waters for sale, rental, or distribution, to the inhabitants of such county," shall be obliged, upon tender and demand, to distribute the water as above stated. It is argued that this language imposes the duty only where the appropriation of the water is made elsewhere than in a city, city and county, or town, and that, as the Moulton land, from which this water was derived, was situated in the city, the water was appropriated within the city, and, hence, that the case falls within the exception. The statute quoted, when properly considered, is not to be thus interpreted. At the time it was enacted, the constitution had provided for the fixing of water rates in cities and towns, but there was no law providing for such control or regulation in the case of water supplied for public use in places outside of cities and towns. The act of 1885 was intended to supply this omission. In the first clause of the title it is designated as "An act to regulate and control the sale, rental

and distribution of appropriated water in this state, other than in any city, city and county, or town therein.'' The entire act relates to water supplied outside of cities and towns. In section 8 there is a clause inclosed in parenthesis in the same words as the exception inclosed in parenthesis in the above-quoted part of section 10, but it occurs at a part of the sentence which leaves no doubt that the purpose of the exception in section 8 was to confine its operation to the subject expressed in the title,—that is to say, to water sold, rented, or distributed for public use outside of any city, town, or city and county. In section 10 the exception is so placed in the sentence as to render its meaning in this respect somewhat ambiguous. According to the rules of statutory construction the ambiguity must, if possible, be so construed as to put the section in which it occurs in harmony with the title of the act and with the other sections on the same branch of the subject. Thus interpreted, the meaning is clear; and there is no difficulty in the interpretation. Its effect is that the place of the ''appropriation,'' mentioned in the part of the section quoted, is the place where the water is used, and not necessarily the place where the source of supply, the pumping plant and waterworks, or the diverting dam, may be situated. Consequently, if the place of distribution and use is outside of any city, town, or city and county, the provisions of sections 8 and 10 apply to the system, although the supply of water may be obtained from a natural source situated within the limits of some city. It is the settled doctrine of this state that a water company engaged in the administration of the public use of distributing water to the inhabitants of a community or neighborhood, whether inside or outside of a city or town, is not only under a duty and obligation to supply the water in proper proportion to the persons composing the class for which the use was created, but further, that if such company, upon proper demand and tender of the established rates, refuses to furnish the water, or threatens to cut off the supply, a proceeding in *mandamus* may be maintained, or an injunction issued, to compel the service, or prevent the deprivation thereof. (See cases last cited.)

The facts alleged show that the plaintiff belongs to the class of persons to whose use the water from the Moulton land was appropriated. The predecessor of the defendant had agreed

to furnish the water to the tract of land subdivided into lots in which plaintiff's lots were situated, and had laid pipes and established the water system for that purpose and for the sale of the water to any others who might desire it. It is not necessary to hold that the agreement above mentioned established a private obligation to supply water to these particular persons. Aside from that the case shows that the East Side Spring Water Company was under obligation, as the administrator of a public use, to furnish the plaintiff's lots with water.

It is unnecessary to determine whether or not a mandatory injunction could be issued, under the equity powers of the court, to compel the continuous operation of a pumping plant, or the establishing of a connection to the lot No. 18, which had not been previously connected. The superior court has full jurisdiction to give any relief warranted by the facts alleged and within the scope of the prayer of the complaint, whether that relief be equitable, or legal, or relief appropriate only in a special proceeding. It has such jurisdiction in this case, even if the relief asked is, in a certain sense, multifarious —as, for instance, in part by injunction and consequently equitable, and in part by mandate, and therefore authorized under a special proceeding in *mandamus.* The demurrer is upon the sole ground that the complaint does not state facts sufficient to constitute a cause of action. The facts are sufficient to justify relief by injunction as to one lot, with additional relief by writ of mandate as to the other, and the proper parties defendant are before the court for both kinds of relief. The objection that there is a misjoinder of causes, even if well taken, which we do not decide, is not made by the demurrer, and it is, therefore, for the purposes of the demurrer waived. (Code Civ. Proc., sec. 434.) Therefore, if a *mandamus* or injunction, or both, would give complete relief, it is within the power of the court to give it in this action.

We perceive no ground upon which the right to the injunction as to one lot, and to the *mandamus* as to the other, can be denied, unless it be by reason of the fact that the source of the water supply is in the city of Los Angeles and the premises to be supplied lie without its limits, or by reason of the fact that the city of Los Angeles is now in charge

of the property devoted to the public use, or that the plant or system whereby this water was formerly distributed has been allowed to become idle and its operation discontinued.

So far as the East Side Spring Water Company and the Los Angeles City Water Company were concerned, there can be no reasonable doubt that the respective locations of the source of supply and the place of use, as stated, would be wholly immaterial. They were both, so far as appears, corporations organized under the laws of this state for the purpose of distributing water for public use. There is nothing to indicate that their powers or duties were limited to the administration of such public use within the city of Los Angeles. They each in turn undertook to supply, and did supply, the particular public use of which the plaintiff, as the owner of the described lots, was the beneficiary. If either of them had continued in charge of the use and continued the operation of the plant, and had cut off or refused to supply water to the plaintiff's lots, an appropriate action would lie in favor of the plaintiff for the proper relief. The fact that the water was obtained within the city, or even that it was taken from the Los Angeles River, which by the special dedication created by the Spanish law for the founding of pueblos was set apart for the exclusive use of the city of Los Angeles, would be no defense in their behalf to such an action, so long as they were able to obtain the water from that source for that use. If the city had prevented them from taking the water for such use, or if, without their fault, from any cause, their supply for such use had been cut off, or had failed, it would perhaps have been a defense; but not so with the mere fact of the different relative situations of the source of supply and the place of use.

The defendants claim exemption from the obligations and liabilities of their predecessors in interest, on the ground that all the waters existing within the city of Los Angeles are dedicated to the exclusive use of the inhabitants of the city; that these waters are held by the city subject to the public trust of continuously distributing the same to such inhabitants in just proportion, and that the corresponding duty rests upon the city; that the city is not authorized to make concessions of the perpetual or exclusive use of any part of such waters to individuals, nor to communities outside the limits of the city;

and that, whatever may have been the acts, obligations, and
liabilities of the East Side Spring Water Company and the
Los Angeles City Water Company, with respect to the waters
of the Moulton land, while the city suffered these companies
to take these waters and devote them to uses outside the city
limits, the municipality itself, now that it has possession and
control of them, is bound to hold them in accordance with
the original trust upon which it received them and devote
them only to the use of the urban inhabitants to whose use
they were dedicated. In support of these contentions they
cite *Lux* v. *Haggin,* 69 Cal. 255, [10 Pac. 674] ; *Vernon I. Co.*
v. *Los Angeles,* 106 Cal. 237, [39 Pac. 762] ; and *Feliz* v. *Los
Angeles,* 58 Cal. 73. They also cite the provisions of the city
charter to the effect that the city shall not in any wise dis-
pose of its rights in the waters of the Los Angeles River, nor
grant or lease to any person or corporation any right or priv-
ilege to use or control the same, or any part thereof, for any
purpose, public or private, nor, without the consent of the
electors of the city, dispose of *any other water or water-rights
owned by the city,* except for the ordinary uses of the city
and its inhabitants, as elsewhere defined in the charter.

It does not appear that the water of the Moulton land com-
posed a part of, or was tributary to, the Los Angeles River,
The respondents do not claim that it is, and, for the purposes
of this case, we assume that it is not, and that if it is im-
pressed with a trust for the exclusive use of the inhabitants
of the city at all, it is because it comes within the description
of *"fuentes*—springs of water appropriated to the supply of
a town"—which, as is stated in *Vernon I. Co.* v. *Los Angeles,*
106 Cal. 237, [39 Pac. 762], were by the Spanish law con-
sidered as communal property. But this class of pueblo prop-
erty, unlike the rivers, was subject to sale to private persons
by the pueblo. The case just cited contains a full discussion
of the Spanish and Mexican law upon the subject of pueblo
property and rights. In the course of his opinion in that
case, Justice Temple says with regard to this class of property,
—that is, public land used in common by the inhabitants for its
waters, its wood, and its pastures: "I do not understand that
these properties were commons in the common-law sense. They
were communal property, subject to be administered by the
pueblo authorities. The public could be dispossessed, and the

character of the lands changed. They might be sold or converted into *solares* or *suertes*, which could be reduced to private ownership. They were not dedicated to the public." (106 Cal. 247, [39 Pac. 765].) Concerning the river, he proceeds to say in contradistinction: "Now the waters of all rivers were, under the Spanish and Mexican rule, public property, to be administered and distributed for the use of the inhabitants." And in the succeeding part of the opinion it is shown that the pueblo of Los Angeles was located near the river and its waters dedicated to the public use for the inhabitants of that pueblo. Of this the court takes judicial notice. (*City of Los Angeles* v. *Pomeroy*, 124 Cal. 641, [57 Pac. 585].) From the complaint it appears that the Moulton land was sold by the city nearly fifty years ago without reservation of any water or water-right, pertaining thereto, that some twenty years ago and for several years thereafter, the water thereon, or a part of it, was devoted to public use outside the city, and that the city, after it again acquired the land, allowed the waters thereof to go to waste. This sufficiently shows, *prima facie* at least, that the water upon this land had been reduced to private ownership and was not owned by the city, nor subject to the public use as part of the public waters of the city, prior to and at the time of its purchase of the land and water system from the East Side Spring Water Company. Its purchase from that company did not free the property conveyed from the burden put upon it by virtue of the appropriation of the water to public use, to which it was then subject in the hands of that company. If it is claimed that this water is tributary to the river, or necessary to its support as a part of its underground supply, or that it has otherwise become free from the burden to which it was previously subject, the facts must be shown in defense.

The charter of Los Angeles gives it power to acquire water and water-rights, within or without the city, for the use of its inhabitants. (Stats. 1889, pp. 455, 457, 458, secs. 2, subds. 7, 15.) In the exercise of this power, it would have the right to buy from any corporation or person engaged in supplying water for public use outside the city any surplus water which such corporation or person might possess. If it were necessary in order to obtain such surplus, the city might, under this power, purchase the entire water supply of such person

or corporation and the water plant or system used in connection with it, so that, after operating the system and supplying the persons entitled to use the water, it could devote the surplus to the use of the inhabitants of the city. (*Hewitt* v. *San Jacinto Irr. D.*, 124 Cal. 192, [56 Pac. 893].) The acquirement of this water plant, and the operation of the system, if necessary, were not beyond the power of the city, and for the purposes of this decision we must presume that the necessity existed.

The question thus presented is whether or not, under the circumstances of this case as presented in the complaint, the city, after thus acquiring this water system, can now discontinue its operation, cease to furnish the water, or any water, to the persons theretofore receiving and entitled to receive it from said system, retain title, possession, control, and management of all the property composing the system, and allow the water previously devoted to the public use to run to waste. It is clear that this cannot be allowed. If there are facts or circumstances which absolve it from the duty to continue the water service, they must be shown in defense.

The water, as we have seen, was appropriated to a public use, of which plaintiff was and is a beneficiary. The city cannot thus continue to hold and control property so appropriated to public use and at the same time refuse to perform the public duty which such possession and control imposes.

We do not mean to say that a corporation engaged in the distribution of water to public uses may not abandon its property and quit the business, without being subject to mandatory proceedings to compel it to continue to carry it on. It may find it impossible to go on. Its supply may become exhausted or be insufficient for paramount needs; the rates fixed by law may be too small to enable it to operate at a profit or without substantial loss; or it may conclude, without reason which the law would consider sufficient, that it will not continue. In case of a natural person it might become physically impossible. We do not intend to declare that in any such case mandatory process would be issued to compel the personal performance of the duty. These questions are not now involved and we express no opinion concerning them. But in such a case, it cannot continue in absolute control of the water and waterworks appropriated to the public service. If a

proper demand, by a person entitled, is made upon it for the continuance of the service, it must either comply or permit the use of the property and plant in previous use and necessary for the service by the demandant, or by the persons beneficially interested, to the end that he, or they, may continue to devote the property to the public service to which it is dedicated. If such permission has been given, or if the city is willing to make an effectual tender of such use in court, or if the service has become impossible from failure of the supply, or if a part only of the property is required for the administration of the service and the necessary part has been offered, or if any other lawful reason exists to excuse the city from continuing the performance of the water service, it will be necessary for it to state the facts in its answer by way of defense. Upon the face of the complaint the plaintiff is entitled to an injunction against the cutting off of the water from his residence lot, and to a writ of mandate to compel the city to connect the other lot with the pipes and supply it with water from said system, or to an injunction to prevent the city from interfering with his own reasonable efforts to establish such connection therewith.

The judgment is reversed.

Sloss, J., and Angellotti, J., concurred.