[No. 11504   *En Banc*.   June 25, 1914.]

D. D. DAY *et al.*, *Appellants*, v. TACOMA RAILWAY & POWER COMPANY *et al.*, *Respondents*.[1]

CARRIERS — PUBLIC DUTIES — ABANDONMENT — AUTHORITY FOR— POWER OF COUNTY COMMISSIONERS. Rem. & Bal. Code, § 9080, empowering county commissioners to grant franchises for railway systems upon public roads outside the limits of incorporated cities and towns and to prescribe the terms and conditions on which they may be enjoyed, does not expressly or by implication confer power upon the commissioners to consent to an abandonment of any public duty imposed upon or assumed by common carriers.

CARRIERS—PUBLIC DUTIES—ABANDONMENT OF LINE. A common carrier having exercised the privileges conferred under a permissive franchise, neither it nor its successor in interest, can, against the will of the state, abandon the enterprise if it works a prejudice to the public interest.

SAME—ACTION TO ENJOIN ABANDONMENT OF LINE—PARTIES ENTITLED—PRIVATE INTERESTS—COMPLAINT — SUFFICIENCY. Individuals, living along the line of a street railway, cannot maintain an action to prevent the company from abandoning the route merely because they, "and many other residents similarly situated," are dependent on the line for railway service, in the absence of any allegation as

[1]Reported in 141 Pac. 347.

to the number of persons affected who are too remote to use a new parallel route, or the manner in which the public convenience will be affected.

SAME — ABANDONMENT OF LINE — PUBLIC INTEREST — COMPETITIVE SERVICE. Injunction does not lie to prevent a street railway company from abandoning that part of its road lying between two stations served by a competing road lying closely parallel, merely because the abandonment necessarily results in depriving all persons to whom both roads are accessible of competitive service; since the whole theory of the public service law (3 Rem. & Bal. Code, § 8626-1 *et seq.*), is opposed to the idea that the public will be better served with two closely parallel lines of road where one road will amply suffice.

RAILROADS—OWNERSHIP OF STOCK IN COMPETING LINE—WHO MAY QUESTION. A private citizen cannot raise the question whether a railroad corporation in owning all the stock of other companies violated Const., art. 12, § 16, prohibiting the consolidation of its stock, property or franchises with any other railroad owning a competing line, or Rem. & Bal. Code, § 8665, further prohibiting the owning of a competing line or any stock or interest in a company owning or operating a competing line; since the question should be left open for the state for such action as it deems wise.

Appeal from a judgment of the superior court for Pierce county, Easterday, J., entered August 9, 1913, dismissing an action for equitable relief, upon sustaining demurrers to the complaint. Affirmed.

*B. S. Grosscup* and *W. C. Morrow,* for appellants.

*John A. Shackleford,* for respondents.

GOSE, J.—This case is before us upon an appeal from a judgment entered after demurrers to the complaint had been sustained, upon the plaintiffs declining to plead further. The complaint is too lengthy to be set forth in full. In substance, it alleges, that the respondents Tacoma Railway & Power Company, Puget Sound Electric Company, and Pacific Traction Company, are foreign corporations, and that they have severally qualified themselves to do business in this state; that, in the year 1888, the city of Tacoma granted to one Thompson and his associates "the right, power and author-

ity" to construct, maintain, and operate a line of electric railway, beginning at "K" street, thence running westerly to what is now known as Proctor street, thence westerly to the city limits; that, on the 2d day of May, 1890, Thompson and T. O. Abbott incorporated the Tacoma & Steilacoom Railway Company, under the laws of this state; that its articles recite that the objects for which the corporation is formed are "to build, equip, and operate," a narrow or standard gauge railway, according to the route described in the franchise granted to Thompson and his associates, thence following a fixed course to and through Steilacoom city; that it acquired the rights granted in the Thompson franchise, and acquired, by purchase and gift, the right of way for an electric line between Tacoma and Steilacoom, constructed the line in the years 1890 and 1891, and put the same in operation as an electric railway doing a general freight and passenger business between the town of Steilacoom and the initial point in the city of Tacoma; that the line has ever since been "maintained and operated;" that, in 1899, "said line" was acquired by the respondent Tacoma Railway & Power Company as a part of its general system of railways in the city of Tacoma and suburbs thereof; that certain rights of way outside of the city limits were donated by the owners in consideration of the building and operation of the road.

It also alleges that, in 1905, the Pacific Traction Company constructed a line of railway from South Seventh street, in the city of Tacoma, through intervening streets to Proctor street, and thence to the north side of American Lake, and about the year 1907 constructed a branch line from a point near the south city limits of the city of Tacoma to the state hospital for the insane, "a short distance from the line constructed by the Tacoma & Steilacoom Railway Company;" that, the Pacific Traction Company was proposing, at said time, to continue its line to the town of Steilacoom; that the branch line from the town of Steilacoom to the city of Ta-

coma is a competing line with the line constructed by the Tacoma & Steilacoom company; that, in December, 1912, the power company applied to, and secured from, the county commissioners of Pierce county, a franchise to extend the line of the Traction company from the state hospital for the insane about a mile and a half northerly to the town of Steilacoom, which franchise was granted by the commissioners, "upon condition that the Tacoma Railway & Power Company would abandon its Steilacoom line between Lemon's Beach Station and Chambers Creek, and grant all its rights in and to said right of way to said county for highway purposes," which franchise and conditions the Power company has accepted, and that it is now threatening to tear up its line between such points; that the appellants all own land adjacent to the line between Lemon's Beach and Chambers Creek, and are dependent upon said line for railway service "both to the village of Steilacoom and to the city of Tacoma, and that there are" many other residents similarly situated; that all persons who are situated so that they can use the lines of both companies will be deprived of competitive service; that the abandoning of the line will greatly and irreparably depreciate the value of the property of all the respondents, and render the same practically useless for residence purposes, and that the appellants would not have purchased their land, and those who reside thereon would not have constructed their residences, had it not been for the operation of the adjacent railway.

It is further alleged that, in the year 1910, the Puget Sound Electric Railway, having theretofore acquired all the stock of the Tacoma Railway & Power Company, acquired the stock of the Pacific Traction Company, and that it has since, in virtue of its ownership of stock, in various and sundry ways, sought to effect a consolidation of the two competing lines; that the tearing up of the line between Lemon's Beach and Chambers Creek will consummate a consolidation of the two competing lines; that the Puget Sound Electric

Railway has caused certain portions of the line of the Pacific Traction Company in the city of Tacoma "to be torn up and destroyed;" that the Tacoma Railway & Power Company enjoys valuable franchises between "K" street, in the city of Tacoma, and Lemon's Beach Station and between Chambers Creek and the town of Steilacoom, all of which were acquired as a part of one continuous line which it purposes to retain.

It is further alleged that the public service commission of the state has not authorized the abandonment of the Steilacoom line or any portion thereof, and that it has at no time approved or authorized any of the acts which the appellants seek to enjoin. The prayer is, (a) that the Tacoma Railway & Power Company and the Pacific Traction Company be enjoined from further perfecting the consolidation of the competing lines; (b) that the Tacoma Railway & Power Company be enjoined from tearing up its tracks and discontinuing the operation of its line of railway between the city of Tacoma and the town of Steilacoom, and that it be enjoined from ceasing to operate such line.

The respondents severally demurred to the complaint upon all the statutory grounds, but the record does not advise us as to the ground upon which they were sustained. We assume, however, that the court was of the opinion that the complaint does not state facts sufficient to constitute a cause of action.

The question presented is, Does the complaint charge a violation of a public duty which the appellants, as private litigants owning property adjacent to the part of the road proposed to be discontinued, may enjoin? In *State ex rel. Grinsfelder v. Spokane St. R. Co.*, 19 Wash. 518, 53 Pac. 719, 67 Am. St. 739, 41 L. R. A. 515, it was held that the defendant, having acquired the street railway line, could be required to resume operation of a part of the line known as Minnehaha Park line, which it had operated for a time and then ceased such operation. There were about forty families, including the relator, living adjacent to the discontinued line,

who availed themselves of the facilities for travel which it afforded. It carried eighty to one hundred and twenty people daily. It was also held that the relator was a proper party to enforce a duty "due to the public." The court said that the defendant, having undertaken to operate the line, owed an implied duty to the public to continue the operation, a duty which it could not abandon without the consent of the granting power, meaning the state or its proper representative acting in pursuance of law.

The board of county commissioners had no legal authority to consent to an abandonment of any public duty imposed upon or assumed by the respondents as common carriers. The code, Rem. & Bal. Code, § 9080 (P. C. 405 § 327), does not, either expressly or by reasonable implication, confer such power upon county commissioners. It merely empowers them to grant authority for the construction, maintenance, and operation of such railway systems upon public roads outside of the limits of incorporated cities and towns, and to prescribe "the terms and conditions" on which these privileges may be enjoyed. In *Wood v. Seattle*, 23 Wash. 1, 62 Pac. 135, 52 L. R. A. 369, cited by the respondents in support of the action of the commissioners, the city charter empowered the city council "to provide for the alteration, change of grade or removal" of any railroad in any street of the city. It was held that this language vested in the city council the power to represent the public interest in respect to railways within the city.

Under the rule announced in the *Grinsfelder* case, neither the grantee nor its successor in interest, having exercised the privileges conferred under a permissive franchise, can, against the will of the state, abandon the enterprise if the abandonment works a prejudice to the public interest. This rule has abundant support in other jurisdictions: *Gates v. Boston & New York A. L. R. Co.*, 53 Conn. 333, 5 Atl. 695; *State v. Hartford & New Haven R. Co.*, 29 Conn. 538; *State ex rel. Ellis v. Atlantic Coast Line R. Co.*, 53 Fla. 650, 44

South. 213, 13 L. R. A. (N. S.) 320. And this duty survives
a transfer of the property to other companies. *Bridgeton
v. Bridgeton & M. Traction Co.*, 62 N. J. L. 592, 43 Atl. 715,
45 L. R. A. 837; *Fellows v. City of Los Angeles*, 151 Cal. 52,
90 Pac. 137; *City of Potwin Place v. Topeka R. Co.*, 51 Kan.
609, 33 Pac. 309, 37 Am. St. 312; *Kansas City Interurban
R. Co. v. Davis*, 197 Mo. 669, 95 S. W. 881; *State v. Sioux
City & Pac. R. Co.*, 7 Neb. 357; *Brooklyn & R. B. R. Co. v.
Long Island R. Co.*, 72 App. Div. 496, 76 N. Y. Supp. 777.
The rule has its basis in the principle that the sovereign
powers are granted and exercised only upon the theory that
these public rights are to be used to promote the general wel-
fare. *Gates v. Boston & N. Y. A. L. R. Co., supra.*

The theory of the complaint seems to be that the road can-
not be abandoned, (1) because the appellants and "many
other residents" similarly situated are dependent upon the
line for railway services; (2) because all persons so situated
that they can use the line of both companies will be deprived
of competitive service; and (3) because the Puget Sound
Electric Railway is using its co-respondents as instruments
to accomplish an unlawful consolidation.

The first proposition is, we think, without merit. Public
service companies, as the name implies, are created to per-
form a public function. As we said in *State ex rel. Whitehouse
v. Northern Pac. R. Co.*, 53 Wash. 370, 102 Pac. 24, roads
may be straightened, and curves and grades may be reduced,
and changes made to meet the demands of commerce and
competition. What we conceive to be the correct rule is aptly
stated in *Asher v. Hutchinson Water, Light & Power Co.*,
66 Kan. 496, 71 Pac. 813, 61 L. R. A. 52, where the court
said:

"An individual can acquire no vested right, as against the
public, in the continued service of a public utility. Such a
doctrine once admitted would destroy the convenience as a
public utility; it would then become hampered and subject to
the control of the individual and made to subserve such in-
terests, to the detriment of the public welfare."

In *Whalen v. Baltimore & O. R. Co.*, 108 Md. 11, 69 Atl. 390, 129 Am. St. 423, 17 L. R. A. (N. S.) 130, it was held that, where the public interest as well as the pecuniary advantage of the railway company is promoted by shortening and straightening the line of road, a private individual cannot require the company to maintain a train service over the abandoned road, although it had contracted with his predecessor in title to construct and maintain a turn-out and siding upon his premises, and to take on and let off persons going to and from his farm, and to leave at the siding for unloading any car containing a fixed amount of freight. The reason for the holding is thus stated:

"We think there is a manifest distinction to be made between covenants to establish and maintain stations for the public convenience, and those to establish and maintain sidings, turn-outs, crossings and the like, for private use merely."

In *Northern Pac. R. Co. v. Washington Territory ex rel. Dustin*, 142 U. S. 492, the court refused to require the railroad company to erect and maintain a station at Yakima City, and to stop its trains there to receive and deliver freight and to receive and let off passengers. The decision was put upon the ground that, "The court will never order a railroad station to be built or maintained contrary to the public interest."

The complaint is silent as to the approximate number of people patronizing the Steilacoom line who are too remote from the other line to avail themselves of its service. Nor does it advise us as to the extent that they patronize the Steilacoom line. The fact that the appellants and "many other residents . . . similarly situated" patronize it at all is left to inference. Those facts were shown in the *Grinsfelder* case. It does appear, however, that the lines lie closely parallel. This being true, the complaint as an entirety, negatives the view that the appellants are dependent upon the

Steilacoom line for service.   It only affords them a more convenient service.

The more difficult question is, Can the respondents be enjoined from abandoning that part of the road between the stations named, when such abandonment will necessarily result in depriving all persons to whom both roads are accessible of competitive service, there having been no legal consent to such abandonment?   The real question is, Will such abandonment be a violation of a public duty which ought to be enjoined?   The allegation is that the roads are near each other. It is not alleged that one road is inadequate to handle the business.   If it were necessary, it might be judicially noticed that one road is ample to serve all the needs of the public between the town of Steilacoom and the city of Tacoma.   The public will still be adequately served after the abandonment. Under the public service commission law, Laws 1911, p. 538 (3 Rem. & Bal. Code, § 8626-1 *et seq.*), all charges for transportation of persons or property shall be "just, fair, reasonable, and sufficient," and every common carrier must render adequate and sufficient service and facilities to enable it to promptly and expeditiously take care of the public business without discrimination.   The whole theory of the public service commission law is opposed to the idea that the public will be better served with two lines of road lying closely parallel, situated as these roads are situated, where one road will amply suffice.   The purpose of this law is to require adequate and safe service at a reasonable price and without discrimination.   When the public is afforded such a service, its needs are satisfied and no citizen can justly complain.   *Sherwood v. Atlanta & D. R. Co.*, 94 Va. 291, 26 S. E. 943. There mandamus was denied where it was sought to require the company to resume operation of that part of its line which it was not required by its charter to construct or operate, but which it had operated for a time.   It was held that, in respect to assumed duties, the court will consider all the circumstances of the case, and grant or deny the relief according

as the duties demanded may or may not promote the public interest. *People v. Rome, W. & O. R. Co.,* 103 N. Y. 95, 8 N. E. 369, holds that, where a railroad company owns two lines of road and can substantially accommodate the people of the state by operating one line between the same points, and can abandon the other line without any serious detriment "to any considerable number of people," it cannot be required by mandamus to operate both lines at a great sacrifice.

Finally, it is contended that the complaint shows an attempt to bring about a consolidation of two competing roads, in violation of art. 12, § 16, of the constitution, and Laws 1909, p. 698, § 1. The former provides: "No railroad corporation shall consolidate its stock, property or franchises with any other railroad corporation owning a competing line." The latter provides:

"That no railroad or transportation corporation shall consolidate its stock, property, or franchises with any other railroad or transportation corporation owning a competing line, or purchase either directly or indirectly, any stock or interest in a railroad or transportation corporation owning or operating a competing line." Rem. & Bal. Code, § 8665 (P. C. 433 § 17).

There is no allegation either that the Puget Sound Electric Railway has consolidated its stock, property or franchises with either of the other respondent companies, or that it owns a competing line. The allegation is that it owns all the stock, of the other companies, they being competing lines. If it has violated either the constitutional provision or the statute, we think that question cannot be raised by private litigants, but should be left open to the state for such action as it deems wise.

Affirmed.

CROW, C. J., MOUNT, MAIN, PARKER, MORRIS, FULLERTON, and ELLIS, JJ., concur.

CHADWICK, J.—(concurring)—Under our present laws, no citizen has a right to insist that two public utilities be

maintained in order to preserve competition. Competition between those engaged in public service is a condition which may have been real; but, in the light of modern industrial development and a more enlightened understanding of such problems, it has become an item of lesser consequence, if indeed, it may be considered at all. The legislature of this state, in the exercise of its legislative functions, has written the law upon a different theory, a theory foreseen by the framers of the constitution. Art. 12, § 1.

The people long since abandoned the hope of relief from unjust rates and inadequate service from competing lines or interests. The history of public service corporations is such that it can be asserted as a fact that reliance upon competition has been a vain hope and, in the greater number of cases, perhaps in all cases, it has been defeated by secret compacts and understandings. The people, therefore, determined to regulate and control, to fix rates and prescribe schedules, to the end that the public shall have an adequate service at a fair cost.

The use by the legislature of the two words "reasonable" and "sufficient," establish this point. That body plainly intended that companies covering the same field should not hereafter be permitted to resort to the old methods of cutting rates and by this means drive the weaker competitor out of the field to the end that the survivor might exploit the public at will. Indeed, two companies furnishing the same service is, under our law, an imposition upon the taxpayer, unwarranted and unjustifiable. It is only necessary to refer to the dual system of telephones that have been maintained in some of the cities of this state to prove this premise. Instead of cheaper and better service, the system has resulted in a double burden of expense, and oftentimes in utter confusion of service. The statute implies that it is better to have one service controlled in all its workings by the agents of the state. Under our public utilties law, we have all the advantages, with none of the disadvantages, of public owner-

ship; and the commissioners of Pierce county would have failed to do their whole duty had they acted otherwise than they did in the case at bar.

Inasmuch as the supposed right to insist upon the pretense of competition is the only plausible ground urged by appellants, it follows that the decree of the lower court should be affirmed.