**MILLER, a taxpayer, etc v
ORRVILLE (village) et, etc**

Ohio Appeals, 9th Dist, Wayne Co

No 909.  Decided June 28, 1934

H. H. Hoppe, Warren, and Troutman & Taggart, Wooster, for plaintiff.

Alton H. Etling, Orrville, and G. Ray Craig, Norwalk, for defendants.

## OPINION

By WASHBURN, PJ.

So far as concerns the claim that applicable statutes violate the constitution of Ohio, we are unable to concur in such claim.

"1. Courts cannot nullify an act of legislation on the vague ground that they think it opposed to a general latent spirit, supposed to pervade or underlie the constitution, but which neither its terms nor its implications clearly disclose."

**Walker v City of Cincinnati, 21 Oh St 14.**

In that case the legislature authorized the city of Cincinnati to build a railroad from that city to Chattanooga, Tenn., at a cost of $10,000,000, which the city was authorized to raise by the sale of bonds. The railroad was to start in this state, extend across another state, and end in a third state, and the city was authorized to levy annually a tax upon the property of its inhabitants to pay for such project, and the property of its inhabitants was pledged to secure the payment of said bonds.

It was said in that case that the legislature had the right to legislate in furtherance of the public good and for public purposes only, and that taxes should be levied for those purposes which properly constituted a public burden, but that what is for the public good and what are public purposes and what does properly constitute a public burden, are for the legislature to determine.

But as we view §§4 and 6 of Art. XVIII of the Constitution of Ohio, adopted in 1912, the denied power and authority in the present case is expressly granted thereby.

Sec. 4 expressly authorizes a municipality to own and operate a utility outside of the municipality if the product or service thereof is to be supplied to the inhabitants of such municipality; and §6 provides that a municipality which, through its own utility, supplies the service or product to its inhabitants, "may also sell and deliver to others * * * the surplus product" etc.

The "others" referred to are necessarily not inhabitants of the municipality, and to sell and deliver its product or transportation service to one outside the municipality necessarily requires the extension of its facilities outside of the municipality.

To hold that, under §6, a municipality operating a utility may deliver its product only within the municipality, is entirely too narrow a construction to put upon said section, and confers no right upon the mu-

nicipality that it did not theretofore have; and we are of the opinion that §§3966 and 3967, GC, which assume to confer upon a municipality the right to extend its electric light and power lines outside of the corporate limits and provide certain limitations in reference to the exercise of such right, do not violate the provisions of said section of the constitution in so far as they assume to grant such right.

In other words, we are of the opinion that said provisions of the constitution are self-executing and that power is thereby granted the village, either expressly or by necessary implication, without the enactment of any legislative authority, to not only own and operate a municipal utility and furnish electricity to the inhabitants within the village, but to also construct the necessary transmission lines and furnish electricity to those who live outside the village, within the limitations contained in said constitutional provisions, and that the mere fact, if it be a fact, that such power was exercised without "the written request" of those living outside the village, as specified in §3966, GC, would not invalidate the exercise of such power; but in this case the evidence establishes that, in the contracts hereinafter referred to with persons outside the village and in which the village agreed to extend its distribution system, such persons petitioned for the building of the line, and therefore the extension was made "on the written request" of those living outside the village, as specified in §3966, GC.

The foregoing construction of said provisions of the constitution is in accordance with the settled legislative policy of the state in reference to the powers of municipalities owning and operating water works utilities over a long period of time, as is shown by the history of legislation on that subject, beginning with an act passed May 7, 1869 (66 O. L. 207-8), and later amended so as to apply to publicly-owned electrical utilities, and extending to 1912, when that policy was made a part of the constitution by the adoption of §§4 and 6 of Article XVIII of the Constitution.

It is a matter of common knowledge to those who were engaged in court work during the years after the use of electricity became general, that an industrial warfare was waged between privately-owned and municipally-owned utilities in Cleveland and other cities of the state, and that, as a result of such contest, the Supreme Court of Ohio, overruling many earlier decisions, declared unconstitutional certain laws relating to the exercise of powers by municipalities; and such controversy led to the adoption of said **Article XVIII of the Constitution,** which is known as the "municipal home rule amendment."

At the time when said amendments were adopted, municipalities had been for many years exercising powers granted by the legislature to build, own and operate facilities for the furnishing of water in territory outside of municipalities, and such powers had been extended to the operation of facilities not owned by the municipality, provided it had superintended the construction of the same; and for some years municipalities had been exercising like powers in reference to the furnishing of electricity.

With that background in mind, it seems plain to us that, when the people adopted §§4, 5 and 6 of Article XVIII of the Constitution, it was plainly the intention, by the use of the words "sell and deliver" in the description of the powers granted, to at least confirm and give constitutional sanction to what was then being done by many municipalities.

We are also of the opinion that, so construed, said provisions of the constitution of Ohio are not obnoxious to the due process clause of the United States Constitution, contained in §1 of the 14th amendment thereof.

The evidence does not disclose that the acquisition of the distribution system outside of the village, and its maintenance and operation, has resulted in the taking of any money raised by general taxation from the inhabitants of the village, or that money belonging to the village has been or is likely to be used for the benefit of nonresidents, or that there has been or is likely to be such a discrimination against the taxpayers and consumers of electricity in the village and in favor of consumers residing outside of the village as deprives the former of their property in violation of the constitution of the United States or of the Constitution of Ohio.

It is also urged that the village is violating §6 of Article VIII of the Constitution of Ohio, which provides that the village shall not "loan its credit to, or in aid of," any "joint stock company, corporation, or association whatever."

This claim is based upon the fact that the village, through its board of public affairs, has entered into contracts with several persons living in territory adjacent to the village (one of which contracts is now in the process of performance), whereby the village has agreed to extend its distribution system in such territory for the

purpose of furnishing electricity to such persons, and in consideration therefor such persons agree to pay a substantial part of the cost of such extension, said payment to be made in installments.

Under this contract the village builds, owns and operates the line, and the prospective customers of the line agree to contribute in installments a substantial part of the cost of the line, but have no interest in, and no ownership or control of, the line.

We hold that, by said contract, the village does not loan its credit to or in aid of anyone, in violation of §6 of Article VIII of the Constitution. That section does not prohibit any species of public improvements which are to be entirely owned and operated by the public.

Walker v City of Cincinnati, supra, at p. 54.

State ex v Cincinnati St. Ry. Co., 97 Oh St 283.

Our conclusion, then, is that, so far as the constitutional questions raised are concerned, the village had and has the right to extend, maintain and operate its distributive system outside of the village.

It is claimed, however, that the method by which that has been and is being done, is illegal, in that the board of trustees of public affairs has been and is acting "without being previously authorized by the council of the village so to do."

The council did appropriate money with which to make extensions, and thereafter the board of trustees of public affairs entered into the contracts hereinbefore referred to with persons outside the village who were to become customers, the village agreeing to make the extensions.

Such a contract is not a debt-incurring contract or a "contract or purchase of supplies or material, or to provide labor for any work under the supervision of the board of public affairs" which is required to be let to the lowest bidder.

Sec 4361, GC, gives to said board power to "manage, conduct and control" said electric utility, and provides that "For the purpose of paying the expenses of conducting and managing" such utility and "of making necessary additions thereto and extensions thereof, * * * such trustees may assess" a light and power "rent, of sufficient amount" and collect the same; and we are of the opinion that said board, by virtue of the statutes of Ohio, had authority to agree to make such extensions without authorization of the council other than the appropriation therefor made by the council, such extensions being made from such rental funds. The contract or purchase of supplies or material or labor for such extension is an entirely different contract.

It is urged in the brief of plaintiff that the extension which the board agreed with prospective customers outside the village to make, and which is partly made, and on which work was suspended after the bringing of this suit, should be enjoined because no contract was let for the materials or the construction of said extension after competitive bidding, which, it is claimed, is required by §4328, GC.

However, no such contract is referred to in the pleadings, and the question was not raised in the Common Pleas Court or before the referee of this court, in argument or otherwise, and is not referred to in the report of the referee, which includes findings of fact and law, and there is no evidence in regard to any such contract which would enable the court to pass upon the question raised for the first time in argument in this court.

Said §6 of Article XVIII of the Constitution of Ohio limits the right of said village in the sale and delivery of electricity to nonresidents of the village to an amount not exceeding 50% of the electricity supplied to the inhabitants of the village, and further limits the village to a sale and delivery of only its surplus electricity.

It is claimed by the plaintiff that said village is producing and intends to continue to produce an unwarranted surplus for the very purpose of engaging generally in business for the benefit of those outside the village and not primarily for the benefit, use and convenience of the inhabitants and taxpayers of the village, and that a fair construction of all of the constitutional provisions hereinbefore referred to and of related statutes, forbids such a course of conduct on the part of the village.

The referee found that the village was not engaging in that course of conduct, that less than 5% of its electrical energy sold is to customers outside of the village, and that the contemplated future extensions are not such as to indicate that the board of public affairs is pursuing a course of conduct for the use and benefit of the public outside of the village but is and has been acting in the interest of and for the use and benefit of the village and its taxpayers.

With that conclusion we agree, and it seems to us that, taking into consideration all of the facts, the evidence discloses a remarkably efficient, capable and profitable management of a utility by a municipality over a long period of time, and that the

plaintiff, as a taxpayer, has no' just cause to complain.

This opinion does not, of course, contain reference to all of the matters discussed in the briefs, but it is sufficient, we think, to indicate our conclusions.

A referee appointed in this court took the evidence and reported the same to this court with a finding of conclusions of fact and law.

Exceptions have been filed to such report by the plaintiff, and such exceptions include a motion to reject and disaffirm the report, including the findings of fact and conclusions of law.

The defendant has filed a motion for an order confirming the report, including the findings of fact and the conclusions of law.

In argument, plaintiff has made special reference to certain findings of fact, and has suggested substitutes therefor, which are more in the nature of evidence than conclusions.

We find that the conclusions of fact set forth in the report of the referee are justified by the evidence, and therefore exceptions thereto are overruled and said findings approved, with a slight modification in language of finding No. 15, which makes plainer but does not change the meaning thereof.

As to the conclusions of law found by the referee, we find them to be more specific and in detail than is required by the issues in the case, and therefore do not approve and confirm them as a whole, but as a substitution therefor we make the following conclusions of law:

That plaintiff has a right to maintain this action; that the village of Orrville is invested with power to extend its electrical transmission lines outside of its corporate limits and sell and deliver its surplus electrical energy to customers residing outside of said corporate limits, in an amount not exceeding 50% of such energy supplied by it within the village, and that the exercise of such power under the facts and circumstances found in this case is not repugnant to the 14th amendment of the United States Constitution or any provision of the Constitution or laws of the state of Ohio; and that plaintiff is not entitled to the relief prayed for in his amended petition.

It is therefore ordered, adjudged and decreed that plaintiff's amended petition be dismissed at his costs, and that defendants go hence and recover of the plaintiff their costs herein and that execution be awarded to collect all of said costs.

FUNK and STEVENS, JJ, concur in judgment.