MARTIN CARROLL, Appellant, v. CITY OF CEDAR FALLS and TOWN OF READLYN, Appellees.

No. 42900.

JUNE 21, 1935.

REHEARING DENIED APRIL 8, 1936.

Smith & O'Connor, Swisher, Swisher & Cohrt, and J. R. Harmon, for appellant.

R. F. Merner, and E. H. McCoy, for appellee City of Cedar Falls.

H. L. Leslie, for appellee Town of Readlyn.

KINTZINGER, J.—This is an action commenced by a resident and taxpayer of the city of Cedar Falls against the city of Cedar Falls and the town of Readlyn, to enjoin them from carrying out a contract entered into with each other on May 28, 1934, to furnish the town of Readlyn with electrical energy from the municipal electric light system of Cedar Falls. Readlyn is about 18 miles from Cedar Falls, and under the contract Cedar Falls is to carry its high-tension wires to the county line, about 16 miles from Cedar Falls, where the town of Readlyn is to connect with it, and receive energy for its distribution system for use in Readlyn.

The petition alleges that by the terms of the contract the city of Cedar Falls would be required to build and maintain high-voltage transmission lines for a distance of many miles beyond its limits, and to generate and produce electric current far in excess of the needs required for its patrons in Cedar Falls; that, for this purpose, Cedar Falls would be required to expend large amounts of public funds, derived from taxation, for a *private purpose*; that the sale of such energy would be for a purely private use and in no sense for a public purpose; appellant, therefore, alleges that sections 6142 and 8310 of the Code, in so far as they authorize the sale of electrical energy to other municipalities, are unconstitutional and void, as being in violation of section 31, art. III of the Iowa Constitution, providing that "no public money * * * shall be appropriated for local, or private purposes," and in violation of section 9, art. I of the Iowa Constitution, and the Fourteenth Amendment to the Federal Constitution, providing that *"no person shall be deprived of * * * property, without due process of law."*

Defendants filed separate motions to dismiss plaintiff's petition on the ground that the service contemplated by the contract is authorized by chapters 312 (section 6127 et seq.) and 383 (section 8309 et seq.) of the Code, and particularly sections 6142 and 8310 authorizing cities and towns to sell or purchase electrical energy to other municipalities. The court sustained defendants' motions, and plaintiff appeals.

Section 6142 of the Code authorizing the sale of electrical energy to other municipalities or persons outside the town limits, as well as to individuals within the corporation, provides as follows:

"They may sell the products of municipal heating plants, waterworks, gasworks, or electric light or power plants to any municipality, individual, or corporation outside the city or town limits, as well as to individuals or corporations within its limits, and may with the consent of the board having jurisdiction thereof erect in the public highway the necessary poles upon which to construct transmission lines; and shall, from time to time in such manner as they deem equitable, assess upon each tenement or other place supplied with heat, water, gas, light, or power, *reasonable rents or rates fixed by ordinance, and shall levy a tax* as provided by law to pay or aid in paying the expenses of running, operating, renewing, and extending such works, and the interest on any bonds issued to pay all or any part of their construction."

Section 8310 of the Code, authorizing the condemnation of property therefor, provides as follows:

"Petition for franchise. Any person, corporation, or company authorized to transact business in the state *including cities and towns* may file a verified petition asking for a franchise to erect, maintain, and operate a line or lines for the transmission, distribution, use, and sale of electric current outside cities and towns and for such purpose to erect, use, and maintain poles, wires, guy wires, towers, cables, conduits, and other fixtures and appliances necessary for conducting electric current for light, heat, or power over, along, and across any public lands, highways, streams, or the lands of any person, company, or corporation, *and to acquire necessary interests in real estate for such purposes.*"

Contracts for the purchase of electrical energy and power by municipalities from others, including other municipal corporations, is clearly authorized by section 6142 of the Code of 1931; and contracts for the sale of electrical energy by municipal corporations to others, including municipalities, are authorized by the same statutes. The validity of contracts authorized by these statutes has already been determined by this court in the following cases: Incorporated Town of Sibley v. Ocheyedan Electric Co., 194 Iowa 950, 187 N. W. 560; Meader v. Inc. Town of Sibley, 197 Iowa 945, 198 N. W. 72; Wapsie Power & Light Co. v. City of Tipton, 197 Iowa 996, 193 N. W. 643, and State v. Des Moines Ry. Co., 159 Iowa 259, 140 N. W. 437. We are controlled by the rule announced therein unless these statutes are vulnerable to any additional constitutional objections raised herein and not heretofore considered.

I. It is the well-settled rule of law in all courts, and especially in Iowa, that a statute is presumed to be constitutional unless it clearly appears to be contrary to some plain and unambiguous provision of the Constitution. The legislature is not prevented from adopting any law it sees fit, unless it is clearly prohibited by some plain provision of the Constitution.

■■■ Section 9, art. III of the Iowa Constitution provides that the legislature "shall have all other powers necessary for a branch of the General Assembly of a free and independent State." The legislature in this state, therefore, has power to enact any kind of any legislation it sees fit, provided it is not clearly and plainly prohibited by the State or Federal Constitutions. The legislature has almost unlimited power and authority in reference to the enactment of laws governing municipal corporations. State v. Manning, 220 Iowa 525, loc. cit. 536, 259 N. W. 213, 219; Eckerson v. City of Des Moines, 137 Iowa 452, loc. cit. 467, 115 N. W. 177; Chicago, B. & Q. Ry. v. Otoe County, 16 Wall. 667, 21 L. Ed. 375.

It is also the well-settled rule that any doubt of the legislature's power to adopt an act will be resolved in favor of its constitutionality. Stewart v. Board of Supervisors, 30 Iowa 9, 1 Am. Rep. 238; McGuire v. Ry. Co., 131 Iowa 340, 108 N. W. 902, 33 L. R. A. (N. S.) 706; City of Des Moines v. Manhattan Oil Co., 193 Iowa 1096, 184 N. W. 823, 188 N. W. 921, 23 A. L. R. 1322; Loftus v. Dept. of Agriculture, 211 Iowa 566, 232 N. W. 412; State v. Manning, 220 Iowa 525, 259 N. W. 213; Gallarno v.

Long, 214 Iowa 805, 243 N. W. 719; Denver & Rio Grande Railroad v. Grand County, 51 Utah 294, 170 P. 74, 3 A. L. R. 1224.

In Stewart v. Board of Supervisors, 30 Iowa 9, 1 Am. Rep. 238, we said:

"This court * * * 'will declare a law unconstitutional only when it is clearly, palpably and plainly inconsistent with the provisions of that instrument.' " We there quote with approval the following language of the Supreme Court of the United States (Bennett v. Boggs, Fed. Cas. No. 1,319, Baldw. 60) : "We cannot declare a legislative act void because it conflicts with our opinions of policy, expediency or justice. We are not the guardians of the rights of the people of the State unless they are secured by some constitutional provision which comes within our judicial cognizance."

In City of Des Moines v. Manhattan Oil Co., 193 Iowa 1096, 1117, 184 N. W. 823, 832, 188 N. W. 921, 23 A. L. R. 1322, we said:

"There is no presumption against the validity of an act of the legislature. *On the contrary, all presumptions are in its favor, and a statute will not be held unconstitutional unless its contravention * * * is so clear, plain, and palpable as to leave no reasonable doubt on the subject.*" (Italics ours.)

II. With these rules in mind, we come to a consideration of the constitutional questions raised by appellant. He contends that the legislature has no power to levy taxes or expend public money for "private" purposes, and that the sale by a municipality of "non-excess" utility products to customers outside of its own limits serves a purely private purpose and is not the rendering of a service to its own inhabitants as a community.

██ Appellant, however, concedes that a municipality may sell and dispose of its "excess" utility products to other municipalities without any statutory authority therefor. This rule is recognized by practically the unanimous weight of authority in this country. 5 McQuillin on Municipal Corporations (2d Ed.) 55; City of Omaha v. Omaha Water Co., 218 U. S. 180, 30 S. Ct. 615, 54 L. Ed. 991, 48 L. R. A. (N. S.) 1084; Pikes Peak Power Co. v. Colorado Springs, 105 F. 1, 44 C. C. A. 333; Fellows v. Los Angeles, 151 Cal. 52, 90 P. 137; Colorado Springs v. Colorado City, 42 Colo. 75, 94 P. 316; Larimer County v. Ft. Collins,

68 Colp. 364, 189 P. 929; City of Henderson v. Young, 119 Ky. 224, 83 S. W. 583; Rogers v. Wickliffe, 94 S. W. 24, 29 Ky. Law Rep. 587; Municipal League of Bremerton v. City of Tacoma, 166 Wash. 82, 6 P. (2d) 587; Miller v. Orrville, 48 Ohio App. 87, 192 N. E. 474; City of South Pasadena v. Pasadena, etc., Co., 152 Cal. 579, 93 P. 490, 19 R. C. L. 788, section 95; Pittsburgh v. Brace, 158 Pa. 174, 27 A. 854; Omaha Water Co. v. City of Omaha (C. C. A.) 162 F. 225, 231, loc. cit. 237, 15 Ann. Cas. 498. Cities may, therefore, in most jurisdictions furnish and sell their excess supply to other municipalities as an incident to the operation of their plants.

If, therefore, a valid contract can be made by a municipality for the sale of its excess product to outsiders, it is difficult to understand how it can be said from the record in this case that the electrical energy proposed to be sold under the contract in question would be any more than the "excess" produced by the city of Cedar Falls. Cedar Falls has a population of 7,500, and Readlyn has a population of less than 400. It can, therefore, hardly be said that the excess products from the lighting plant of the city of Cedar Falls would not be sufficient to supply all the electrical energy required by the town of Readlyn. For this reason, if for no other, there is considerable doubt about the unconstitutionality of sections 6142 and 8310, and we would, therefore, be inclined to uphold the validity of contracts authorized thereby.

 III. Notwithstanding a conclusion thus suggested, we pass on to a consideration of the constitutional objection raised against the validity of the statutes authorizing cities and towns to sell and purchase electrical energy to and from each other. Appellant contends that sections 6142 and 8310 are unconstitutional and void as being in conflict with section 31, art. III of the Iowa Constitution, which provides, inter alia, that:

"No public money or property shall be appropriated for *local, or private purposes,* unless such appropriation, compensation, or claim, be allowed by two-thirds of the members elected to each branch of the General Assembly," the contention being that the expenditure of moneys for the production and sale of electrical energy as authorized by sections 6142 and 8310, constitutes an expenditure of public funds to be used for a purely "*private purpose*," and that if expenditures for a private pur-

pose be allowed, it would necessarily result in the unlawful taxation of private property for an unauthorized purpose.

If the alleged contemplated expenditures authorized by the sale of such electrical energy to other municipal corporations be considered an expenditure for purely *"private purposes,"* then appellant's contention might be correct. If, on the other hand, the expenditures so authorized be considered an expenditure for *"public purposes,"* then there is no violation of the constitutional inhibition contained in section 31, art. III of the Iowa Constitution.

The Constitution does not define the term *"private"* or *"public"* purpose, and no inflexible definition of those terms has as yet been adopted for our guidance. It is, therefore, within the province of the court, guided by legislative enactments, and our former decisions, to determine what is a "public" or a "private" purpose within the meaning of the law. Our construction, however, must be governed by the rules of constitutional construction hereinabove referred to. Aided by such rules, can we say that the expenditure of funds to furnish electrical energy for use by another municipal corporation is for a "private" and not a "public" purpose?

Appellant contends that under the construction of these terms as announced in Hanson v. Vernon, 27 Iowa 28, 1 Am. Rep. 215, a tax in aid of railroads cannot be enforced because it is not levied for a "public purpose." This case, however, was soon reversed by the case of Stewart v. Board of Supervisors, 30 Iowa 9, 1 Am. Rep. 238, in which this court held that a tax, levied upon the property of a township, in aid of a railroad built through the county, is for a public purpose, and does not constitute the taking of property for a private purpose.

In that case we expressly held that the taxing power of the state may be exercised *"for any object that will justify the exercise of the right of eminent domain."* (Italics ours.) We there said:

"Conceding, however, that the taxing power *ought* not to be exercised, except in behalf of a public object, it is unquestionable that it may be exercised for public purposes—for any object that will justify the exercise of the right of eminent domain. If the State can, for any purpose, take the land of a citizen, it may tax him for a like purpose. The object or purpose should be a public

one in either case. But it would be absurd to say that the right of the citizen to prevent his property from being taken for other than public uses, which is secured by express constitutional limitation, may be overridden, but that his right to save his money from being applied, through the process of taxation, to other than public uses, which right is *not* embodied in the constitution, must be respected. And yet such absurdity is involved in the position that the citizen's real property may be taken absolutely to aid in the construction of a private enterprise—a railroad—while his money cannot be taken by the process of taxation to aid in the same enterprise. The proposition is that you may not tax the property holder to aid the construction of a railroad, although the taxing power is not limited in the constitution, yet you may take his land for the same purpose, notwithstanding the right to thus take is limited to 'public purposes.' If the taxing power cannot be constitutionally invoked in aid of railroads, neither can the power of eminent domain. If the act under consideration is in conflict with the constitution, in that it taxes the people in aid of the construction of railroads, * * * then all the legislation of this and every other State, invoking the power of eminent domain in behalf of railroads, and other like internal improvements, are unconstitutional; and all the adjudications of the courts for more than a century, sustaining such exercise of the right of eminent domain, are based upon false premises, and are erroneous.''

In Stewart v. Board of Supervisors, supra, we held that while the right of taking property for a public use is conditioned upon making compensation therefor, this power is exercised under the right of eminent domain. The taxing power of the state is not thus limited. We there held that a tax could be levied in aid of a railroad constructed in the county, although it never entered the township in which the tax was levied, because the construction and operation of a railroad through the county is a benefit to the whole county, and therefore the tax is for a public purpose. In that case, we quote with approval the following language from Swan v. Williams, 2 Mich. 427:

''Property taken by a railroad company was a taking for public use within the meaning of the constitution. * * * Nor can it be said that the property, when taken, is not used by the public, but by the corporation for its own benefit and advantage.

It is unquestionably true that these enterprises may be, and probably always are, undertaken with a view to private emoluments on the part of the corporators, but it is none the less true that the object of the government in creating them is *public utility*, and that private benefit, instead of being the occasion of the grant, is but the reward springing from the service. If this be not the correct view, then we confess we are unable to find any authority in the government to accomplish any work of public utility through any private medium, or by delegated authority; yet all past history tells us that governments have more frequently effected these purposes through the aid of corporations and companies than by their immediate agents; and all experience tells us that this is the most wise and economical method of securing these improvements.''

It is the well-settled rule of law that private property cannot be confiscated by a municipality or any other corporation under the right of eminent domain, except for a public purpose. The right securing private property from confiscation for *private* purposes is protected by provisions in both Federal and State Constitutions.

The right to confiscate private property on behalf of utility companies for the construction of transmission lines is authorized by statute. The statutory provisions authorizing the confiscation of private property under the right of eminent domain is a clear implication that the use of such property is for a public purpose. Power and light companies are continually taking advantage of the benefits derived from the confiscation of private property under the power of eminent domain. These rights are enjoyed by them only because the property taken is used for a public purpose. One of the uses made of the property confiscated, under this right, is the construction, maintenance, and operation of high-tension transmission lines and wires. If such use be considered a ''public purpose'' on behalf of private corporations, there can be no logical reason why the use of similar property for a similar purpose by a municipal corporation should not also be considered a ''public'' purpose. It would indeed present an anomalous situation to hold that certain services performed by a private corporation could be considered a public purpose, and that the same service, if performed by a public corporation, would be considered a private purpose.

In Stewart v. Board of Supervisors, supra, we also said:

"The right to exercise the power of eminent domain in behalf of railroads and other improvements of public utility is recognized by all courts, and denied by no one. While admitting this right it is said that the legislature has no constitutional power to levy a tax on the property of the citizens in aid of a railroad corporation, because it is a mere private enterprise. It has been abundantly shown that the object for which the right of eminent domain is exercised is a public one, for public utility, for 'public use,' within the meaning of the constitution; that this right can be exercised in behalf of these corporations upon no other ground. If, then, the building of a railroad is a public object so as to authorize the taking of the private real property of the citizen * * * for a right of way, is it any less a public object for the purpose of receiving aid through the medium of taxation to assist in building the road upon such right of way? *The right of eminent domain and the taxing power are both sovereign powers.* [Italics ours.] The former is limited to public uses by express words in the constitution. The latter is not."

It has been repeatedly held that electric light and power companies under the right of eminent domain can confiscate private property for use in its utility business. This is permitted solely upon the ground that it is to be used for a public purpose, although the profits and emoluments derived therefrom may and do belong to private corporations, and whose stock is owned by private individuals. Municipal corporations have a dual character, one governmental or public, and the other proprietary or quasi private. Nevertheless, if in its proprietary capacity, it performs services which are in their nature for a public purpose, such as are also performed by a private corporation, a use, which under a private corporation is considered public, will not be considered *private* when performed by a public corporation. The same rules apply to both public and private corporations.

In Meader v. Inc. Town of Sibley, 197 Iowa 945, 956, 198 N. W. 72, 76, we said:

"We pointed out in the Ocheyedan case that the Legislature has clothed cities and towns with a dual power as regards municipally-owned public service plants. One is to establish and maintain the same for the benefit of the inhabitants of the municipal-

ity, over whom the city or town has jurisdiction. * * * In its other capacity, as provided by the statute, a municipality is authorized to sell its product to those entirely outside its jurisdiction and against whom it could have no power to levy any assessment.''

''The power of a municipal corporation under legislative authority to expend funds raised by taxation upon public institutions, such as hospitals, schools, and civic undertakings, which are owned, operated and controlled by the municipality is unquestioned.'' 19 R. C. L. 716, section 25.

''The power of municipal corporations, with legislative authority, to engage in the sale and distribution to its inhabitants for compensation of some commodity which is essential to wholesome, comfortable and convenient living is well established, even if the business thus undertaken is one which can be and ordinarily is carried on by private capital, if it is an undertaking which cannot be carried on without the aid of some government franchise, such as the right of eminent domain, or the privilege of occupying the public streets with permanent structures, such as poles, wires and pipes. It is now well settled that the Legislature, in the exercise of its constitutional power may authorize cities to appropriate real estate for waterworks and may levy and assess upon the general tax list an assessment on all taxable real and personal property in the corporation for the payment of the cost and repair of such waterworks. * * * Upon similar reasoning, it has been uniformly held that a municipal corporation may be constitutionally authorized to raise money by taxation to provide the necessary works for manufacturing and distributing gas or electricity, not only to light the streets and public buildings, but to furnish the inhabitants of the municipality with the means of lighting their private residences and places of business. * * * In general, it may be said that matters which concern the welfare and convenience of all the inhabitants of a city or town and which cannot be successfully dealt with without the aid of powers derived from the legislature may be subjected to municipal control when the benefits received are such that each inhabitant needs them and may participate in them, and it is for the interest of each inhabitant that others as well as himself should possess and enjoy them.'' 19 R. C. L. 717, 718, and 719, section 26.

Some cases are cited by appellant in support of the contention that a municipal corporation cannot supply electrical energy to other municipalities and people outside of the corporate limits. Dyer v. City of Newport, 123 Ky. 203, 94 S. W. 25 and 26; Mayor, etc., of Knoxville v. Park City, 130 Tenn. 626, 172 S. W. 286, L. R. A. 1915D, 1103; Stiles v. Village of Newport, 76 Vt. 154, 56 A. 662, loc. cit. 666; Taylor v. Dimitt (Mo. Sup.), 78 S. W. (2d) 841, loc. cit. 843. An examination of most of these cases, however, will show there was no statutory authority therein for such service. One of the strongest cases relied upon by appellant to sustain his contention is Stiles v. Village of Newport, 76 Vt. 154, 56 A. 662. That case, however, is distinguishable from the case at bar. The only question involved therein was the right of the town of Newport to hold exempt from taxation its property situated in the town of Derby and used for the purpose of furnishing a water supply to that town. The question did not relate to the power of the defendant municipality to tax its own citizens for either the construction or maintenance of its own water plant. It simply held that property of the town of Newport situated and used in the town of Derby for the benefit and profit of the town of Newport was subject to taxation in the same manner as similar property owned by a private corporation. For that purpose alone the court there held that the defendant's property in the town of Derby was not considered in public use, under a statute exempting from taxation property used for ''public'' purposes. That case is not an authority for the contention that a statute authorizing one municipality to furnish water to another is invalid because it might authorize an expenditure of public funds for private purposes.

Many of the courts of this country, however, have adopted the rule that the legislature has authority to confer power upon one municipality owning a water, light, or other public utility plant, to contract with other municipalities to furnish its products to them or their inhabitants. Incorporated Town of Sibley v. Ocheyedan, etc., Co., 194 Iowa 950, 187 N. W. 560; Meader v. Inc. Town of Sibley, 197 Iowa 945, 198 N. W. 72; Wapsie Power & Light Co. v. Tipton, 197 Iowa 996, 193 N. W. 643; 5 McQuillin on Municipal Corporations (2d Ed.) 59; City of Henderson v. Young, 119 Ky. 224, 83 S. W. 583; Hyre v. Brown, 102 W. Va. 505, 135 S. E. 656, 49 A. L. R. 1230; City of Omaha v. Omaha Water Co., 218 U. S. 180, 30 S. Ct. 615, 54 L. Ed. 991, 48 L. R. A.

(N. S.) 1084; Omaha Water Co. v. Omaha (C. C. A.), 162 F. 225, 15 Ann. Cas. 498; Andrews v. City of South Haven, 187 Mich. 294, 153 N. W. 827, L. R. A. 1916A, 908, Ann. Cas. 1918B, 100; Kearny v. Jersey City, 78 N. J. Law, 77, 73 A. 110; Pittsburgh v. Brace Brothers, 158 Pa. 174, 27 A. 854; Clark v. Los Angeles, 160 Cal. 30, 116 P. 722, 723; Speas v. Kansas City, 329 Mo. 184, 44 S. W. (2d) 108; Public Service Com. v. Kirkwood, 319 Mo. 562, 4 S. W. (2d) 773; Holmes v. Fayetteville, 197 N. C. 740, 150 S. E. 624; Western Reserve Steel Co. v. Cuyahoga Heights, 118 Ohio St. 544, 161 N. E. 920; Moody v. Weymouth, 276 Mass. 282, 177 N. E. 80; Yamhill Elec. Co. v. McMinnville, 130 Or. 309, 274 P. 118, 280 P. 504; Miller v. Orrville, 48 Ohio App. 87, 192 N. E. 474.

In Yamhill v. McMinnville, 130 Or. 309, 274 P. 118, 124, 280 P. 504, the court said:

"The construction of plants and lines for the purpose of generating and transmitting power or light is a public purpose, and is so recognized by our statute, section 7059, Or. L., which grants the right of eminent domain to such private corporations to the same extent that it is granted to railways and like corporations, and to the same extent that a like power is granted to municipalities by other sections heretofore quoted. Being a public purpose and being a function which the state itself could exercise without reference to its effect in the matter of competition with private corporations engaged in the same business, it follows, as was held in Pearce v. Roseburg [77 Or. 195, 150 P. 855], supra, and Churchill v. Grants Pass [70 Or. 283, 141 P. 164], supra, that the state has plenary power to delegate the right to exercise that function to municipalities, which, as before remarked, are, as to these matters, mere governmental agencies of the state."

In concluding this branch of the case, it may be said that practically all questions raised herein, except that relating to section 31 of art. III of the Iowa Constitution, have been fully and ably considered in the cases of Meader v. Incorporated Town of Sibley and Incorporated Town of Sibley v. Ocheyedan, supra, and a further consideration of the reasons given for those opinions is deemed unnecessary here. We might also say that if appellant's contention with reference to section 31, art. III of the Iowa Constitution, be correct, and if the construction of high-

tension wires and electric lines for the purpose of furnishing electrical energy to municipalities and others outside of the limits of a town be held unconstitutional, it would be upon the ground that the furnishing of such electrical energy is not a *"public purpose."* Such a holding might greatly jeopardize the rights of private and public utility companies in exercising the right of eminent domain, because private property can only be confiscated for *"public purposes."*

Without again repeating the reference to the question of eminent domain, it is our conclusion, as stated in Stewart v. Board of Supervisors, supra, that the taxing power of a state may be exercised for any object that will justify the exercise of the right of eminent domain. Such has been the rule in this state ever since the decision of Stewart v. Board of Supervisors, supra, in 1870. It must be conceded that private property for the construction of transmission electric systems and lines can be confiscated under the right of eminent domain because their operation is for a public purpose. It is therefore our conclusion that any expenditure contemplated by sections 6142 and 8310 of the Code for the construction of such lines must be held to be an expenditure for a "public purpose." We have no doubt about this question, but if there was, it must be resolved in favor of the constitutionality of the statutes in question.

**IV.** Appellant also contends that the statutes in question violate section 9, art. I of the Iowa Constitution, and the Fourteenth Amendment to the Constitution of the United States, because they would deprive plaintiff of his property "without due process of law," in permitting expenditures for supplying non-excess electrical energy outside of its own limits, thereby authorizing the taking of appellant's money, through the power of taxation, for an expenditure outside of its own limits for a purely private purpose. As shown by the previous division of this opinion, the construction of a high-tension electric system for use in furnishing other municipalities and others outside of the corporate limits with electric power and energy is a use for a public purpose.

This court held in the case of Stewart v. Board of Supervisors, 30 Iowa 9, 1 Am. Rep. 238, that a tax levied for a public purpose does not infringe upon the "due process" clause of the Constitution. In that case, we said:

" 'Due process of law,' means ordinary judicial proceedings in court. Boyd v. Ellis, 11 Iowa [97] 99; Ex parte Grace, 12 Iowa [208] 214 [79 Am. Dec. 529]; Taylor v. [Porter] Potter, 4 Hill [N. Y]. 140 [40 Am. Dec. 274]. So that if this clause of the constitution is held to apply to the taxing power, then no tax whatever for the support of the government can legally be levied and collected, except through the means of judicial proceedings in the courts; whereas it is well known that the sovereign power of taxation belongs exclusively to the legislative department of the government, and that all taxes are levied and collected in pursuance of legislative enactments, without the aid of the courts. This clause has no reference whatever to the taxing power, and where property is taken in the lawful exercise of the taxing power, it is not taken 'without due process of law.' "

As already disclosed, Stewart v. Board of Supervisors, supra, specifically holds that a tax in aid of the construction of a railroad operated by a private corporation is a valid tax. It therefore necessarily follows with greater force that any tax required for the construction and maintenance of an electric plant, *used for a public purpose,* by a municipality, is also valid. In other words, if a tax is valid in aiding a private corporation engaged in the public service, it would be no less valid if levied in the interest of a municipality engaged in a like service.

This objection was specifically urged in Meader v. Incorporated Town of Sibley, 197 Iowa 945, 198 N. W. 72. The record in that case shows that the objection raised therein was *"that the statutes in question violate the 'due process' clause of the constitution."* This very question was raised by appellant in the Meader case in substantially the following language:

"If the contract is not in violation of the statutory law of Iowa, * * * then Secs. 720 and 724 will be so held * * *, said local residents and taxpayers, will be *'deprived of their property without just compensation,'* without due process of law, *and in violation of the equal protection of the laws and in conflict with* * * * the 14th Amendment to the Constitution of the United States."

In disposing of this objection, the court in that case said: "We hold that the contract is valid, and that the statute under which said contract was executed is not in violation of constitutional provisions."

It is our conclusion that the constitutional objection relating to the due process clause of the Constitution was disposed of in Meader v. Incorporated Town of Sibley, supra, and we adhere to the ruling made therein on that question.

Appellant assumes that he will suffer great and irreparable injury because of possible taxes which might be levied against him as a result of the sale of electrical energy by Cedar Falls to the town of Readlyn. It may as readily be assumed that the officials of the City of Cedar Falls are not voluntarily entering into any expenditures for the mere purpose of taxing its citizens. To the contrary, it might well be assumed that the sale of electrical energy to other municipalities will enable Cedar Falls to furnish light and power to its own inhabitants at a lower cost, and likewise enable the town of Readlyn to secure lower rates than might be obtained from light and power companies having no competition.

The history of municipal ownership of public utilities shows that the use of such utilities was originally confined to the municipality as a corporation. This use was soon extended by the sale of its utility products to citizens within the corporate limits. This use was still later enlarged, so as to permit the sale to outsiders of surplus or excess products, not required for corporate uses. Such sales were held valid because the excess might be wasted unless sold. Each step in the advancement or extension of municipal powers in the utility business was met by litigation contesting it. These powers have been finally extended by statute in this and other states so as to permit the sale of its products to other municipalities and others outside of the corporate limits. This power has been given in this state by the statutes referred to. These statutes have been upheld by the case of Meader v. Incorporated Town of Sibley, 197 Iowa 945, 198 N. W. 72, and other cases cited.

As the power of the legislature in granting power to municipalities is supreme, unless restricted by constitutional provisions, it has ample authority to enact such legislation. By this we do not mean to say that other constitutional objections may not exist, but, if so, they have not been raised or referred to in this case.

For the reasons hereinabove set out, we are constrained to hold that section 6142 and section 8310 of the Code are not unconstitutional, and that the contract entered into thereunder is

valid and binding. It is our conclusion that the ruling of the lower court in sustaining defendants' motions to dismiss was right, and the same is hereby affirmed.—Affirmed.

ANDERSON, C. J., and DONEGAN, PARSONS, HAMILTON, and RICHARDS, JJ., concur.