CITY OF MUSCATINE et al., Appellees, v. E. R. SWICKARD et al., Appellants.

No. 46051.

OCTOBER 27, 1942.

REHEARING DENIED FEBRUARY 12, 1943.

John M. Rankin, Attorney General, John E. Mulroney, Assistant Attorney General, and Frank Drake, County Attorney, for appellants.

Matthew Westrate, and Robert K. Stohr, City Attorney, both of Muscatine, R. G. Remley, of Webster City, and Cor. Van De Steeg of Orange City, for appellees.

MILLER. J.—■ Plaintiffs' petition asserts that the City of Muscatine is a special-charter city that owns and operates a municipal electric plant and distribution system; the defendants constitute the State Tax Commission and the tax officials of Muscatine county; as a part of the distribution system of its municipal electric plant, the city has constructed and maintained and is now operating certain transmission lines outside the corporate limits of the city in four townships which are adjacent to the city; the rural lines total approximately 12 miles of transmission lines, constitute an integral part of the distribution system of the municipal plant, and are used to furnish electric current and service to patrons located in the vicinity of said lines at the same rates paid by residents of the city; the revenue derived from said rural lines is deposited in the same fund and mingled with the revenue derived from customers within the city limits, is used for the operation and maintenance of the plant and distribution system; the rural lines are but a small integral part of the distribution system, are devoted to a public use for the benefit of the public, are not held for pecuniary profit, and are exempt from taxation under the provisions of section 6944 of the Code, 1939.

The petition further asserts that the State Tax Commission issued a certificate of assessment for the purpose of taxation against said rural lines and directed the county auditor to enter the same on the tax lists for the year 1940; the auditor did enter said transmission lines for taxation in said year and certified the same for collection to the county treasurer; the assessments were based upon a valuation of $12,600 and the

taxes amounted to $345.23; the assessments as made and the taxes so levied are illegal, void, and uncollectible, contrary to section 9, Article I of the Constitution of Iowa (due-process clause). The prayer was that the assessments be canceled, annulled, and set aside and that the defendants be permanently enjoined from attempting to collect said taxes now assessed and from attempting to assess or collect taxes on said rural transmission lines in the future.

The answer of the State Tax Commission denies all allegations not expressly admitted. The commission admits that the City of Muscatine owns and operates electric transmission lines located outside the city for the purpose of serving rural customers located in the vicinity of said transmission lines and that the lines were assessed for the purposes of taxation. The commission asserts that the transmission lines are devoted to a use which is not a public use within the meaning of section 6944 of the Code, 1939, and are held for pecuniary profit and therefore are not exempt from taxation. The prayer was that the petition be dismissed. The answer of the taxing officials of Muscatine county is similar to that filed by the State Tax Commission.

Trial was had to the court upon a stipulation of facts to the effect that the City of Muscatine is a special-charter city, owns and operates a municipal electric plant and distribution system for the sale of electric current and energy to the inhabitants of said city and territory adjacent thereto, as well as for the purpose of supplying its own requirements for street lighting, lighting its buildings, and for such other uses of electric current as the city may require; the plant was constructed and acquired in 1923 at a cost of $350,000 and is now operated pursuant to the provisions of chapter 329.1 of the Code, 1939; as a part of the distribution system, transmission lines are now operated outside of the corporate limits as follows: the Airport line of 2,300 volts, extending approximately 4 miles to the municipal airport and used to serve the airport and approximately 14 rural customers; the Burlington Road line of 4,000 volts, extending approximately 2 miles and serving 13 rural customers; the County Farm and Lucas Street line of 2,300 volts, extending 1.6 miles, serving the county farm and about 20 rural customers;

the Isett Avenue line of 2,300 volts, extending about 1.3 miles, serving 43 rural customers; the Park Avenue line of 2,300 volts, extending 1.7 miles and serving approximately 31 rural customers; the Geneva Market and Dam No. 16 line of 4,000 volts, extending to the U. S. Government Lock and Dam No. 16, approximately 1.55 miles long, serving 17 rural customers and the U. S. Government Dam No. 16; each distribution line situated outside of the city limits is an extension of existing distribution lines located within the city; the rural customers are charged the same basic rates as those paid by customers residing within the limits of the city; the revenue from the sale to rural customers is deposited in the general fund of the electric plant in the same manner as the revenue derived from the sale to customers residing within the city; the total revenue derived from the sale of electric energy to rural customers is less than one per cent of the total revenue of the plant; all of the rural lines have been and are now being operated at a loss to the electric plant; rural transmission lines are described in the certificates of assessment which were issued by the tax commission to the county auditor, without notice to the plaintiffs.

The cause was submitted to the court on said stipulation of facts and was taken under advisement. The court determined that the allegations of the plaintiffs' petition are true and that the plaintiffs are entitled to the relief therein demanded; that the rural transmission lines constitute municipal property devoted to public use and not held for pecuniary profit; as such they are exempt from taxation under the provisions of section 6944 of the Code, 1939, and the assessment of said transmission lines for purposes of taxation was illegal and void. Accordingly, the court decreed that the certificates of assessment on said rural transmission lines and the taxes levied thereunder be canceled and set aside; the defendants were permanently enjoined from attempting to collect said taxes and from making any assessment against said rural transmission lines hereafter. The defendants have appealed to this court.

Paragraph 2 of section 6944, Code, 1939, exempts from taxation ''the property of a county, township, city, town, school district or military company of the state of Iowa, when de-

voted to public use and not held for pecuniary profit.'' The trial court determined that the rural transmission lines involved herein constitute the property of a city that is ''devoted to public use and not held for pecuniary profit,'' within the contemplation of said tax exemption. Appellants challenge such interpretation of the statute. We hold that there is merit in appellants' contention.

In challenging the trial court's decree herein, appellants' contention is definitely narrowed by specific concessions which are important to bear in mind in our consideration of this case. Appellants concede that the municipally owned electric plant is exempt from taxation and that the distribution system located within the corporate limits is likewise exempt from taxation. Of course, the plant and the distribution system, which is located within the corporate limits, are not involved in the assessments which were certified by the commission. This concession is important merely from the standpoint of the theory under which the commission asserts that the rural lines involved herein are subject to taxation.

The commission also concedes that, under the rule announced by this court in the case of City of Osceola v. Board, 188 Iowa 278, 176 N. W. 284, if an electric plant is municipally owned but is situated outside the city, it is still exempt from taxation, and further that, if transmission lines are maintained outside of the city for the purpose of bringing electric current to the city to operate the distribution system within the city, such transmission lines are exempt from taxation even though, as an incident thereto, rural customers are supplied with electric current. Here, again, we are discussing a situation that is not involved under the record presented to us. The concessions are important only from the standpoint of the theory under which the commission asserts that the rural lines herein should be taxed.

By reason of the foregoing, appellants' contentions are narrowed down to the specific rural lines involved herein. The commission asserts that these lines are taxable because they are located without the corporate limits, are maintained for the purpose of supplying rural customers with electric energy, and the service supplied to the rural customers is the primary purpose

for the transmission lines. We hold that the contentions have merit.

One of the authorities upon which appellants rely is the case of Stiles v. Village of Newport, 76 Vt. 154, 56 A. 662. In that case the Village of Newport owned and operated a water system for fire protection and other municipal purposes and also for the purpose of furnishing its inhabitants with water for domestic use for compensation. In addition thereto, water mains were constructed and maintained to the Village of West Derby and a distribution system was there maintained to furnish water to the Village of West Derby and its inhabitants. The court determined that the waterworks was exempt from taxation under a statute similar to ours, which exempted property employed in a public use. The court further held that the exemption applied to the distribution system whereby water was furnished to the inhabitants of Newport for domestic use for compensation. However, the court held that the distribution system which was maintained for the purpose of supplying water to the Village of West Derby and its inhabitants was not devoted to a public use within the contemplation of the tax-exemption statute. In so holding, the court states (76 Vt. at pages 171, 172, 173, 56 A. at pages 666, 667) as follows:

"It remains to consider whether the conclusions previously reached regarding the use of the system in the defendant village are applicable to the action of the defendant in furnishing water to the village of West Derby and its inhabitants. The municipal duty of the village of Newport as regards the maintenance of mains and hydrants is confined to its territorial limits. The municipal relation which enters into the question of domestic supply is confined to its own inhabitants. * * * We see no ground upon which the West Derby branch of this system can be held to be devoted to a public use, either as regards fire protection or domestic needs. The village of Newport owes no municipal duty to the village of West Derby or its inhabitants, and has no municipal interest there. Its sale of water to that village and its inhabitants is for the revenue obtainable thereby, independent of any connection with municipal duty or interest. Although disposed of for the same purposes, the sale

cannot be regarded as a public use, because of this want of municipal relation.

"* * * Here, the village of Newport has built and installed a branch outside its corporate limits, which is devoted wholly to the needs of another village, and can never be made available for its own municipal service; and the question is whether the property so created and circumstanced shall be treated as serving an incidental and therefore a public use. It might not be easy to frame a safe and acceptable definition of an incidental use, but we think it may safely be said that the supplying of the municipal and domestic needs of another municipality through a complete system of distributing pipes and hydrants created for that purpose, is not such a use. The plaintiff has assessed the hydrants located in Derby, and we hold that they are taxable."

The language of the Vermont court, above quoted, was quoted with approval and applied by the Supreme Court of Tennessee in the case of Knoxville v. Park City, 130 Tenn. 626, 172 S. W. 286, L. R. A. 1915D, 1103, wherein the court held that Park City had a right to tax the water mains and distribution system whereby the city of Knoxville supplied through its municipal waterworks plant the needs of Park City and its inhabitants on the theory that the furnishing of such water to Park City and its inhabitants by Knoxville was not a use of property for a public purpose within the tax-exemption provisions of the Tennessee Constitution and statutes. In so holding, the court states (130 Tenn. at page 636, 172 S. W. at page 288) as follows:

"It is difficult to conceive how the city of Knoxville has any public or corporate purpose to serve within the corporate limits of Park City. All municipal purposes therein are those of Park City, created by legislative act to exercise them. The furnishing of a water supply for itself and its inhabitants is its municipal purpose and cannot be Knoxville's.

"Nor may it logically be conceived that the city of Knoxville serves even incidentally its own corporate public purpose by means of the Park City system. What is the primary 'public

purpose' of Park City may not be an incidental 'public purpose' of Knoxville. The legislature will be taken to have intentionally lodged the full power and duty in that regard in its local governmental representative, Park City.''

Appellees contend that we are precluded from applying the rules announced by the courts of Vermont and Tennessee because of the language used by this court in the case of Carroll v. City of Cedar Falls, 221 Iowa 277, 261 N. W. 652. In that case, the plaintiff sought to enjoin the city of Cedar Falls from constructing a transmission line to the town of Readlyn, contending that the statute authorizing the operation of such a transmission line and the sale of electric energy to the town of Readlyn was unconstitutional because it undertook to permit the imposition of taxes for a private purpose. Reliance is had upon the language appearing in division IV of our opinion (221 Iowa at page 290, page 659 of 261 N. W.) as follows:

''As shown by the previous division of this opinion, the construction of a high-tension electric system for use in furnishing other municipalities and others outside of the corporate limits with electric power and energy is a use for a public purpose.''

The previous division of our opinion in that case appears at pages 282 to 290, inclusive. We there determined that the purpose for which the proceeds of taxes might be devoted was a public purpose analogous to that which supports the right to exercise the power of eminent domain. At page 285 of 221 Iowa, page 656 of 261 N. W., we state:

''The right to confiscate private property on behalf of utility companies for the construction of transmission lines is authorized by statute. The statutory provisions authorizing the confiscation of private property under the right of eminent domain is a clear implication that the use of such property is for a public purpose. Power and light companies are continually taking advantage of the benefits derived from the confiscation of private property under the power of eminent domain. These rights are enjoyed by them only because the property taken is used for a public purpose. * * * It would indeed present an

anomalous situation to hold that certain services performed by a private corporation could be considered a public purpose, and that the same service, if performed by a public corporation, would be considered a private purpose.''

In the concluding paragraph of division III of the opinion in the Carroll case, we stated (221 Iowa at page 290, page 659 of 261 N. W.) as follows:

''It must be conceded that private property for the construction of transmission electric systems and lines can be confiscated under the right of eminent domain because their operation is for a public purpose. It is therefore our conclusion that any expenditure contemplated by sections 6142 and 8310 of the Code for the construction of such lines must be held to be an expenditure for a 'public purpose.' ''

The fact that the public purpose which we were discussing in the Carroll case was held to be analogous to the public purpose which permits a private corporation to exercise the right of eminent domain would seem to be important. A private utility company exercises such right, yet the transmission line which is constructed by such corporation is subject to taxation. We hold that the public purpose, contemplated by the exemption from taxation, is not the same type of public purpose contemplated as the basis for the exercise of the right of eminent domain. Such holding is supported by the language in our opinion in the Carroll case. We there refer to the holding in the case of Stiles v. Village of Newport, supra, and distinguish that case, stating (221 Iowa at page 288, page 658 of 261 N. W.) as follows:

''One of the strongest cases relied upon by appellant to sustain his contention is Stiles v. Village of Newport, 76 Vt. 154, 56 A. 662. That case, however, is distinguishable from the case at bar. The only question involved therein was the right of the town of Newport to hold exempt from taxation its property situated in the town of Derby and used for the purpose of furnishing a water supply to that town. The question did not relate to the power of the defendant municipality to tax its own citizens for either the construction or maintenance of its own

water plant. It simply held that property of the town of New-port situated and used in the town of Derby for the benefit and profit of the town of Newport was subject to taxation in the same manner as similar property owned by a private corporation. For that purpose alone the court there held that the defendant's property in the town of Derby was not considered in public use, under a statute exempting from taxation property used for 'public' purposes. That case is not an authority for the contention that a statute authorizing one municipality to furnish water to another is invalid because it might authorize an expenditure of public funds for private purposes.''

By the language above quoted this court expressly held that there is a distinction between the public purpose necessary to support the exercise of the right of eminent domain or the power to tax and the public purpose that will exempt property from taxation. This distinction is also apparent from the reference that is made (221 Iowa 284) to our holding in Stewart v. Board of Supervisors, 30 Iowa 9, 1 Am. Rep. 238, wherein we held that taxes might be levied in aid of a railroad. The public purpose of the railroad justifies the levying of the tax, but does not exempt its property from taxation.

Appellees rely upon the cases of City of Traverse City v. Township of Blair, 190 Mich. 313, 157 N. W. 81, Ann. Cas. 1918E, 81, and Township of Geneva v. City of South Haven, 261 Mich. 492, 246 N. W. 196. The Traverse City case is not in point but the Geneva Township case is. In the Traverse City case the municipal electric plant was located outside of the corporate limits in Blair Township and the township undertook to tax it. As above pointed out, appellants concede that the electric plant should be exempt because it was devoted to a public purpose of the municipality. They have no quarrel with the court's holding to that effect. Our case does not present that question.

In the Geneva Township case, the facts were analogous to those now before us. The city of South Haven operated a municipal electric plant and, in addition to supplying its own needs and those of its inhabitants, had transmission lines extending outside its limits into Geneva Township whereby en-

ergy was sold to residents of the township. Geneva Township undertook to tax such lines. The court referred to its decision in the Traverse City case, held that it was controlling and that the lines were exempt, stating, at page 494 of 261 Mich., page 196 of 246 N. W., as follows:

"That the city of Traverse City sold light and power to private parties did not affect its public or municipal character; the reason for the rule being the Constitution (art. 8, §23) authorizes the municipality to own property either within or outside its corporate limits to be used to supply customers with electricity and not exceeding 25 per cent. of the output of such municipally-owned plant furnished by it within the corporate limits may be sold outside the city. A municipally-owned plant is a public enterprise; underlying it and ultimately liable to be used for its support is the power of taxation, which power may be exercised only for a public purpose. The court called attention to the statute (1 Comp. Laws 1929, §3395) exempting lands owned by any county, township, city, village, or school district and buildings thereon used for public purposes, and said: 'The exempting language of the general statutory provision is plain, without distinction as to location, and we find no rule of construction authorizing the court to read into the act any exceptions based on territorial boundaries. As it reads it clearly applies to such public property used for public purposes wheresoever located.'

"We think this case controlling of the present, and the property in controversy not subject to taxation."

This decision is directly contra to those of Vermont and Tennessee above quoted from. It will be noted that the Michigan Constitution expressly authorized a city to sell, outside its limits, not to exceed twenty-five per cent of the output of its plant. We have no such limitation in Iowa. The Michigan court also strongly indicates that the public purpose which will support the exercise of the power of eminent domain or the power to tax will support an exemption from taxation. This is contrary to the position taken by us in Carroll v. City of Cedar Falls, supra.

Neither side has cited to us any decision of this court, other

than Carroll v. City of Cedar Falls, supra, which seems to pass upon the precise question before us. The language of that case is dictum, for there we had the question of the power to tax and here we have the question of exemption from taxation. The rule of Vermont and Tennessee seems to be irreconcilable with that of Michigan. We choose to follow the rule of Vermont and Tennessee.

As appellants point out, this court has repeatedly stated that taxation is the rule, exemption the exception. Statutes and constitutions differ. We must look to our own statute, section 6944, Code, 1939. What is the public purpose that the legislature intended should support an exemption from taxation? As to property of a municipality, it seems to us that the public purpose must be one that is a municipal purpose. The supplying of electric energy to inhabitants of rural territory outside the corporate limits is not a purpose of the City of Muscatine. Were we to hold otherwise, many possibilities are conceivable which would seem to be contrary to what the legislature had in mind. The exemption of property of a municipality from taxation is founded upon the theory that the citizens of the city should not be taxed to raise money to pay taxes on their own property. But that theory does not apply when the property is outside the city and is devoted to purposes of the vicinity where located. The citizens of that vicinity are not taxed to pay the taxes on the property of the city. If the city decides to operate beyond its borders as a public utility, why should not the property be subject to taxation where found? The citizens of that locality would look to such property for tax revenue if the utility were a private corporation. Why should not a municipal corporation, that has left its borders, be required to operate as a utility on the same basis as any other public utility? Why should the citizens of the territory so supplied be deprived of tax revenue that would otherwise be available? We hold that the rule of Vermont and Tennessee is sound and should be applied to our interpretation of section 6944 of the Code, 1939.

Appellees contend that, even though the rural lines are taxable, they cannot be taxed under the provisions of chapter 340, Code, 1939. Section 7089 makes said chapter applicable

to "any person, copartnership, association, corporation, or syndicate (except cooperative corporations or associations which are not organized or operated for profit) that shall own or operate transmission line or lines for the conducting of electric energy located within the state and wholly or partly outside cities and towns, whether formed or organized under the laws of this state or elsewhere." Appellees contend that the term "corporation" there used does not include a municipal corporation. Appellants contend that the situation is analogous to that presented by the case of State v. City of Des Moines, 221 Iowa 642, 266 N. W. 41, wherein we held that the gasoline 'excise-tax law was applicable to municipal corporations, although not specifically designated, because that statute as a whole demonstrated that municipalities were intended to be included within the statute. The commission also points out that, in paragraphs 9 and 10 of section 6943.026, Code, 1939, it is given general power to see that all property is valued and assessed in the manner and according to the real intent of the law. The statutes are, in some respects, awkward when applied to the situation presented herein. However, since we hold that the rural lines are taxable, the commission should undertake to see that taxes are assessed and collected. This duty they have undertaken to perform. We hold that the action taken was proper.

By reason of the foregoing, the cause is reversed and remanded to the district court for the entry of a decree in harmony with this opinion.—Reversed and remanded.

All JUSTICES concur.